465 A.2d 1275

**COMMONWEALTH of Pennsylvania**

v.

**James FERRER, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 10, 1981.

Filed Sept. 23, 1983.

Burton A. Rose, Philadelphia, for appellant.

Steven Cooperstein, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CERCONE, President Judge, and HESTER and McEWEN, JJ.

McEWEN, Judge:

We here consider the consolidated appeals from the denial of two distinct applications for separate writs of mandamus, both of which were filed to compel the Philadelphia County prison authorities to recompute the manner in which appellant was to serve the balance of two separate sentences as a result of a parole violation of each sentence. Appellant argues essentially that since the sentencing judge in each of the two separate cases failed to specify the manner in which the sentence for violation of parole should be served, those

sentences should be deemed to be concurrent—rather than consecutive as recorded by the prison authorities—with a third sentence appellant was serving at the time that the parole was revoked in each of the two cases which are the subject of this appeal. We affirm.

Appellant had pleaded guilty to theft by unlawful taking as of Information No. 337, December Session, 1973, and was sentenced on January 21, 1974, by the learned Judge William Porter to a term of five years probation. Appellant was subsequently determined to have violated the terms of the sentence of probation and was sentenced by Judge Porter on November 18, 1975, to serve a term of imprisonment of from six months to twenty-three months in the Philadelphia County prison, to run consecutively to any sentence he was then serving.[1] Appellant was paroled after serving the six month minimum term of the sentence.[2] However, as a result of subsequent criminal conduct, Judge Porter on June 8, 1978, determined that appellant had violated the parole upon the six month to twenty-three month sentence imposed upon Information No. 337, December Session, 1973, and ordered appellant to serve the unserved seventeen month balance of that sentence. Judge Porter did not state whether that seventeen month balance was to be served in consecutive fashion with the sentence of imprisonment appellant was already serving.[3] Appellant subsequently applied to Judge Porter for a writ of mandamus to compel the prison authorities to record the seventeen month balance as running concurrently with the com-

1.  Although not complete, the record in this case does reveal that at the time of the imposition of this sentence, petitioner had been sentenced five days earlier on November 13, 1975, upon Information Nos. 494–98, September Term, 1975, involving completely distinct offenses, to a term of eleven and one-half to twenty-three months as well as to an additional term of two years probation to commence upon his release from prison.

2.  The record does not reflect the precise date on which petitioner was paroled.

3.  The record further does not reveal what sentence petitioner was serving at the time he was sentenced to serve the remainder of the original sentence on this conviction.

pletely distinct sentence that appellant was serving at the time that Judge Porter directed him to serve the seventeen month balance. Judge Porter denied the application, as a result of which appellant undertook an appeal to this court as of No. 2829, Philadelphia, 1980.

In a totally distinct and unrelated case, the distinguished Judge Joseph T. Murphy, after a trial without a jury, found appellant guilty of aggravated assault, possession of instruments of crime, tampering with a witness and terroristic threats as of Informations Nos. 494–99, September Term, 1975. Judge Murphy sentenced appellant to a term of imprisonment of from eleven and one-half months to twenty-three months and to a further two year term of probation to commence upon his release from prison. Appellant was paroled at the completion of the minimum term of eleven and one-half months but, on June 15, 1978, one week after Judge Porter had revoked his parole and directed that he serve the seventeen month balance of the sentence imposed as of Information No. 337, December Session, 1973, Judge Murphy revoked his parole on the sentence imposed upon Information Nos. 494–99, September Term, 1975, and sentenced petitioner to serve the eleven and one-half month balance of that sentence. Judge Murphy did not state whether that eleven and one-half month balance was to be served in consecutive fashion with the sentence of imprisonment appellant was then serving or consecutive with the seventeen month balance of the sentence that had been imposed by Judge Porter.[4] Appellant subsequently applied to Judge Murphy for a writ of mandamus to compel the prison authorities to record the eleven and one-half month balance as running concurrently with the completely distinct sentence that appellant was serving at the time that Judge Murphy directed him to serve the eleven and one-half month balance. Judge Murphy, as had Judge Porter, denied the application, as a result of which appellant has appealed to this court as of No. 2967, Philadelphia, 1980.

Appellant asserts that:

**4.** As earlier noted, the record does not reflect what sentence petitioner was serving at the time parole was revoked on these latter charges.

Each judge failed to state that the balance of the months remaining upon the sentence was to be served consecutive with the sentence of imprisonment appellant was then undergoing.

That Judge Murphy failed to state that the balance of the months remaining upon the sentence was to be served consecutive with the balance of the months to be completed upon the sentence of Judge Porter.

That, therefore, the prison authorities should record the sentences of Judge Porter and Judge Murphy as running concurrently with one another and as running concurrently with the sentence appellant was already serving. That each Common Pleas Court Judge erred in refusing to issue a writ of mandamus to the prison authorities to so record the sentence.

Since appellant correctly states that each judge did not express the specific direction that the balance of the sentence was to be served in a consecutive fashion, the question for our determination is whether there is authority for the prison officials to compute the sentences in consecutive fashion. We are of a mind that it is already well settled that a parolee from a county prison, upon being convicted of a crime committed while on parole and sentenced thereon to the same institution from which he was paroled, must first complete his unfinished term, once it is determined he was in violation of his parole, before he commences service of the sentence for the latter offense. *Commonwealth ex rel. DiBonbi v. Baldi*, 339 Pa. 96, 15 A.2d 352 (1940) (affirmed per curiam on the basis of *Commonwealth v. Ripka*, 37 D & C 315 (1940)). *Accord, Commonwealth ex rel. Sweeney v. Keenan*, 168 Pa.Super. 137, 78 A.2d 33 (1951); *Commonwealth ex rel. Little v. Keenan*, 168 Pa.Super. 125, 78 A.2d 27 (1951). The *Ripka, supra,* opinion, which the Supreme Court would seem to have made its own, proceeded through a thoughtful analysis before concluding that parolees, whatever the length of their sentence or the institution where it is to be served, when convicted of a crime committed while on parole, must serve in consecutive fashion the sentence

for the new crime as well as the unexpired balance of the parole sentence. The opinion, after noting that parolees from state penitentiaries must serve their sentences in such fashion, *see Commonwealth ex rel. Kent v. Smith,* 323 Pa. 89, 186 A. 812 (1936); *Commonwealth ex rel. Meinzer v. Smith,* 118 Pa.Super. 250, 180 A. 179 (1935), states:

These cases settle the law of Pennsylvania on this subject so far as it applies to sentences to the penitentiary, and we think that in this respect there is no difference between sentences to the penitentiary on the one hand, and to the county prison on the other. It is true that parolees from State penitentiaries and county institutions are regulated by different acts, the latter being governed by the Act of June 19, 1911, P.L. 1059, and that they do not contain the same provisions. They were passed at the same session of the legislature, however, and were approved by the Governor on the same day, and together constitute our system of parole legislation. By them parole was introduced as a part of our system of penology. The first of these acts, which regulates parolees from penitentiaries, is rather elaborate in its provisions. The second lays down no rules whatever for the regulation of parolees from the county prison. It is but one paragraph in length, and, except as subsequently amended by the Act of May 11, 1923, P.L. 204, to prescribe regulations for the hearing of petitions for parole, it merely confers upon the quarter sessions courts the power 'after due hearing, to release on parole any convict confined in the county jail, house of correction, or workhouse' of its district, and 'to recommit to jail, workhouse, or house of correction on cause shown by such probation officer that such convict has violated his or her parole, and to reparole in the same manner and by the same procedure as in the case of the original parole if, in the judgment of said court, there is a reasonable probability that the convict will be benefited by again according liberty to such convict, and also to again recommit for violation of such parole.'

There are no provisions here, such as in the act relating to penitentiaries, prescribing what shall be done upon a violation of parole by a parolee, except that he may be recommitted and reparoled in the discretion of the court. We think, therefore, that the only reasonable conclusion to be reached from this complete absence of express legislative declaration upon the subject in the second act is that the legislature considered that, by the previous act relating to the penitentiary, it had given to the word 'parole' a connotation sufficiently fixed and definite, at least as to basic principles, to render its further definition unnecessary when used in subsequent legislative enactments. In this respect we think that the acts should be interpreted similarly in order that the administration of parole may be uniform, and shall differ only in those particulars in which a legislative intent to distinguish between parolees from penitentiaries and from local county institutions is apparent or reasonably and necessarily to be inferred. This being so, we find no statutory authority for holding the general consequences of a parole violation to be different in the case of prisoners sentenced to the county prison from those prescribed for penitentiary prisoners, except that, in the former case the power is given to the courts to reparole after commitment for violation of parole, whereas this power has not been conferred upon the Board of Pardons, the paroling authority in the case of penitentiary prisoners.

*　　*　　*　　*　　*　　*

The theory of parole is based upon the benefit to be derived by society and the prisoner from remitting the immediate service of the balance of his sentence on the condition that, during his parole period, he does not again violate the law. He is still subject to the sentence, but the obligation to serve the balance of it is merely suspended to rearise upon his misbehavior; and the value of the parole as a steadying and reformative measure would be progressively weakened, if the parolee's liability to pay

the forfeit implied in the condition were permitted to be diminished by mere lapse of time.

*Commonwealth v. Ripka, supra* at 318–20.

This landmark decision was addressing the statutes in effect at the time of the holding, namely, two separate Acts that became law on the same day:

> Act of June 19, 1911, P.L. 1055 § 10, as amended. Section 10 of that Act (61 P.S. § 305)[5] specifically directed that whenever a parolee was convicted of a crime committed while on parole, the unexpired term and the term for the new offense were to be served in a consecutive manner.

5. § 305. **Conviction during parole; service of unexpired term**

If any convict released on parole, as provided for in this act, shall, during the period of his or her parole, or while delinquent on said parole, commit any crime punishable by imprisonment for which he or she is at any time thereafter convicted in any court of record and sentenced to any place of confinement other than the penitentiary from which he or she was released on parole, such convict shall, in addition to the penalty imposed for such crime committed during the said period, and after the expiration of the same, be compelled, by detainer and remand as for an escape, to serve in the penitentiary from which said convict had been released on parole, or in any other institution to which he or she may be legally transferred, the remainder of the term (without commutation) which said convict would have been compelled to serve but for the commutation authorizing said parole, and if not in conflict with the terms and conditions of the same as granted by the Governor; but, if sentenced to the penitentiary from which said convict was released on parole, then the service of the remainder of the said term originally imposed shall precede the commencement of the term imposed for said crime. If no new sentence is imposed for such crime or crimes, punishable by imprisonment, committed during period of parole, or while delinquent on parole, for which he or she has been convicted in any court of record, either by plea or trial, said convict shall be compelled, by detainer and remand as for an escape, to serve in the penitentiary from which said convict had been released on parole, or any other institution to which he or she may be legally transferred, the remainder of the term (without commutation) which said convict would have been compelled to serve but for the commutation authorizing the parole, and if not in conflict with the terms and conditions of the same as granted by the Governor. 1911, June 19, P.L. 1055, § 10; 1915, June 3, P.L. 788, § 1; 1931, June 22, P.L. 862, § 1.

Act of June 19, 1911, P.L. 1059 § 1, as amended. Section 1 of that Act (61 P.S. § 314)[6] authorizes the county courts to release on parole any convict confined in a county jail and to recommit the parolee to jail if the court determines the terms of the parole have been violated.

While the Act of 1941, August 6, P.L. 861, § 17, as amended, (61 P.S. § 331.17) subsequently conferred upon the Pennsylvania Board of Parole exclusive jurisdiction of persons who had received a sentence of two years or more

6. § 314. **Parole from county jails, houses of correction, or workhouses; procedure; violation of parole; reparole**

The courts of quarter sessions and the courts of oyer and terminer of the several judicial districts of the Commonwealth, and other courts of record having jurisdiction, are authorized, after due hearing, to release on parole any convict confined in the county jail, house of correction, or workhouse of their respective district. No convict shall be paroled, under the provisions of this act, except upon petition verified by the oath of the person convicted or by some one in his or her behalf, and presented and filed in the court in which such person was convicted. Upon the presentation of any such petition, the court shall fix a day for hearing. A copy of said petition shall also be served upon the district attorney and upon the prosecutor in the case, if he is resident within the county, at least ten days before the day fixed for said hearing. Proof of service upon the district attorney and the prosecutor shall be produced at the hearing. After such hearing, the court shall make such order as to it may seem just and proper. In case the court shall parole such convict, it shall place him or her in charge of and under the supervision of a designated probation officer. Any of said courts shall have power to recommit to jail, workhouse, or house of correction on cause shown by such probation officer that such convict has violated his or her parole, and to reparole in the same manner and by the same procedure as in the case of the original parole if, in the judgment of said court, there is a reasonable probability that the convict will be benefited by again according liberty to such convict, and also to again recommit for violation of such parole. This power of parole shall extend for a period not to exceed the maximum sentence provided by law for the offense of which the convict was convicted, regardless of the sentence first imposed upon the prisoner: Provided, however, That any of said courts may release on parole, upon petition to any of said courts, any person who has been committed to any jail, workhouse, or house of correction by any magistrate, alderman, or justice of the peace. Said courts shall have the same power to recommit such persons paroled as herein set forth. 1911, June 19, P.L. 1059, § 1; 1921, May 5, P.L. 379, § 1; 1923, May 11, P.L. 204, § 1.

Repealed in Part

**This section is repealed in so far as it relates to persons over whom exclusive jurisdiction to parole is vested upon the Board of Parole by act 1941, Aug. 6, P.L. 861, § 35.**

and thereby removed from the county court any jurisdiction over the parole of such prisoners, and while the 1941 Act and its subsequent amendments (61 P.S. § 331.21a) reiterated that the unexpired sentence of a convicted parolee must be served in consecutive fashion with the new sentence, the analysis, rationale and holding of *Ripka* remained unaffected. Therefore, while we agree with appellant that he is not under the jurisdiction of the Pennsylvania Board of Parole and that, therefore, he is not subject to the specific requirement imposed by 61 P.S. § 331.21a that his sentence be served in a consecutive fashion, the *Ripka* holding establishes the applicability of the consecutive sentence requirements of 61 P.S. § 305 to a parolee who is within the jurisdiction of the county court.

Appellant argues that Section 305 was repealed by the Act of April 28, 1978, P.L. 202, No. 53, but apparently has overlooked the fact that the effective date of repealer was June 27, 1978, a date subsequent to both orders that appellant serve the balance of the expired sentence, one of which was entered on June 8, 1978, and the other on June 17, 1978. It should also be noted that the legislature expressly provided that Section 305, as well as other related statutes, pursuant to 42 Pa.C.S.A. § 20002(a)[955], "shall remain in effect as to existing indeterminate sentences until the expiration thereof." Therefore, it is apparent that the unexpired terms of the original sentences upon which petitioner was paroled must necessarily be served in a consecutive manner with the sentences for the offense or offenses out of which the two parole violations arose.

Nor are we persuaded that the provision of Pennsylvania Rule of Criminal Procedure 1406(a) [7] is applicable. It would

7. Pa.R.Crim.P., Rule 1406, 42 Pa.C.S.A., entitled **Imposition of Sentence: Computation and Service,** reads in part:
      (a) Whenever more than one sentence is imposed at the same time on a defendant, or whenever a sentence is imposed on a defendant who is incarcerated for another offense, such sentences shall be deemed to run concurrently unless the judge states otherwise.

seem to be beyond argument that Rule 1406 is applicable only to the initial imposition of sentence and not to an order of court that directs a parolee to serve an unexpired term. Had there been any intent to prescribe such a regulation, such revision would have been a part of Rule 1409, the specific Rule relating to "Violation of Probation or Parole: Hearing and Disposition". Pa.R.Crim.P., Rule 1409, 42 Pa.C.S.A.

Therefore, we conclude that Judge Porter properly denied the petition for a writ of mandamus directing that the prison officials compute the unexpired balance of the sentence he had imposed as a sentence concurrent with the sentence he was already serving. Accordingly, Judge Murphy properly concluded that the unexpired balance of the sentence he had imposed was not to be concurrent with the sentence he was already serving, but there remains the question of whether the unexpired balance of the sentence imposed by Judge Murphy should be served concurrently or consecutively with the unexpired balance of the sentence imposed by Judge Porter. We are unable, however, to consider this question since the sole issue presented to and ruled upon by both Common Pleas Court Judges in the two separate applications for a writ of mandamus was the question of whether the unexpired terms that were required to be served by reason of the parole violation were to be served consecutively with the sentence already being served. *City of Pittsburgh v. Pennsylvania Department of Transportation*, 490 Pa. 264, 270 n. 7, 416 A.2d 461, 464 n. 7 (1980); *Staiano v. Johns Manville Corp.*, 304 Pa.Super. 280, 450 A.2d 681 (1982); *Rizzo v. Schmanek*, 63 Pa.Cwlth. 547, 439 A.2d 1296 (1981).

The order of Judge William Porter which is the subject of Appeal No. 2829 Philadelphia, 1980, is affirmed.

The order of Judge Joseph T. Murphy, which the subject of Appeal No. 2967 Philadelphia, 1980, is affirmed.