470 A.2d 164

Amedeo VOLPE and Anne C. Volpe, H/W, Appellants,

v.

JOHNS–MANVILLE CORPORATION, Johns-Manville Sales Corporation, Raybestos-Manhattan Inc., Owens-Corning Fiberglass Corp., Forty-Eight Insulation, Inc., Nicolet Industries, Inc., Pittsburgh Corning Corporation, GAF Corporation, Celotex Corporation, Armstrong Cork Company, Unarco Industries, H.K. Porter Co., Inc., Southern Asbestos Company, J.P. Stevens Inc., Eagle-Picher Industries, Inc., Amatex Corporation, Delaware Asbestos and Rubber Company, Pacor, Inc., Fibreboard Corporation, Keene Corporation, Carlock, Inc.

Superior Court of Pennsylvania.

Argued April 25, 1983.

Filed Dec. 23, 1983.

Petition for Allowance of Appeal Denied May 10, 1984.

132

Martin Greitzer, Philadelphia, for appellants.

Lowell A. Reed, Jr., Philadelphia, for appellees.

Before CERCONE, President Judge and SPAETH, HESTER, CAVANAUGH, WICKERSHAM, WIEAND and HOFFMAN, JJ.

WICKERSHAM, Judge:

In this case we are asked to decide whether admiralty law, rather than the Pennsylvania statute of limitations, is applicable to Amedeo Volpe's claims that his asbestosis is due to defendants' conduct. This litigation began in 1977, when Amedeo Volpe, formerly a civilian employee at the Philadelphia Naval Shipyard, filed a complaint in trespass and assumpsit against Johns-Manville Corporation and numerous other defendants (hereinafter known as Defendants). Mr. Volpe's complaint alleged that the Defendants were all engaged in the business of mining, manufacturing, selling, or distributing asbestos and asbestos products and that he came into contact with Defendants' asbestos products during his employment at the Navy Yard. The complaint further alleged that Mr. Volpe came into contact with asbestos as he worked on ships both in dry dock and on the navigable waters of the United States.

After Defendants filed preliminary objections to Volpe's complaint, the complaint was amended. In response, the Defendants filed an answer and new matter. The Defendants admitted that asbestos products were placed in the stream of commerce but denied the other allegations of the

complaint. As new matter, the Defendants asserted that Volpe's claims were barred by the statute of limitations, laches, and failure to give notice on the warranty claims.

The Defendants then moved for summary judgment on the ground that Volpe's claim is barred by the statute of limitations. Oral argument was conducted before the Honorable Harry A. Takiff of the Philadelphia County Court of Common Pleas. After consideration, Judge Takiff ruled that admiralty law did not control the case and that the two year Pennsylvania statute of limitations for torts barred Volpe's suit. This appeal timely followed.

The pleadings and depositions established the following facts. Amedo Volpe was employed at the Philadelphia Naval Shipyard from 1967 to 1974. In October of 1973 Mr. Volpe was given his yearly physical examination. The physical included x-ray examinations of Mr. Volpe's lungs; it was these routine x-rays that led a physician at the Navy Yard to diagnose asbestosis. Mr. Volpe testified that he first heard he had asbestosis from the Navy Yard doctor in November 1973. Eventually, Mr. Volpe was referred to Dr. Harold Israel, a lung specialist.

It was Dr. Israel who first explained to Mr. Volpe what asbestosis is. As Mr. Volpe related during a deposition, Dr. Israel told him that asbestosis caused a concrete-like formation in the lungs and that while his condition would not improve, further exposure to asbestos could worsen the disease. Mr. Volpe then decided to avoid exposure to asbestos at work; in December of 1973, Mr. and Mrs. Volpe obtained and read an article in the New Yorker magazine which described the danger posed by asbestos in the workplace. Mr. Volpe retired from the Navy Yard in early 1974 because of his health problems (arteriosclerosis and asbestosis). This suit followed.

Questions of admiralty law are, of course, most frequently decided by the federal courts. Mr. Volpe relies heavily on a decision from the Court of Appeals for the Fourth Circuit, *White v. Johns-Manville Corp.,* 662 F.2d 234 (4th Cir.1981), *cert. denied,* 454 U.S. 1163, 102 S.Ct. 1037, 71

L.Ed.2d 319 (1982). In *White,* five shipyard workers received jury verdicts against various manufacturers of asbestos products; the district court granted judgment n.o.v. in favor of the defendants and declined to exercise admiralty jurisdiction because the alleged injuries suffered bore no reasonable relationship to traditional maritime activity. The circuit court stated that the issue before it was whether the district court should have exercised its inherent admiralty jurisdiction.

The circuit court began its analysis by citing to a leading Supreme Court decision delineating the boundaries of admiralty jurisdiction, *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). *Executive Jet Aviation* held that a tort action is within admiralty jurisdiction if there is both (1) a maritime locality of the injury, and (2) a significant relationship to traditional maritime activity. *Id.* at 268, 93 S.Ct. at 504. The circuit court proceeded to apply the *Executive Jet* tests to the products liability claim.

According to the majority, the locality prong of the *Executive Jet* test was easily satisfied. The plaintiffs alleged that they installed asbestos insulation at the shipyard and dry dock areas as well as aboard vessels located on navigable waters. The court then considered whether the circumstances surrounding the employees' injuries satisfied the maritime nexus prong of the *Executive Jet* test. The plaintiffs installed asbestos insulation, without which the vessels would have been unable to carry passengers and cargo. The court held that because the asbestos insulation became an integral part of the ship, the installation of the insulation is essential to maritime industry. "Therefore, the work done by these shipyards bears a 'significant relationship to traditional maritime activity' because the installation of the asbestos products has a direct effect on marine navigation and commerce." *White v. Johns-Manville, supra,* at 239.

Appellants would have us adopt the reasoning of the Fourth Circuit Court of Appeals. Mr. Volpe asserts that

*White v. Johns-Manville, supra,* is dispositive of this case because the United States Supreme Court denied certiorari. Mr. Volpe argues that his work history is identical to that of the plaintiffs in *White,* and that he also worked on ships in dry dock as well as on the navigable waters of the United States. Thus, Mr. Volpe believes he has satisfied the locality test as a matter of law. Mr. Volpe welded boilers and pipes, work that is just as essential to the function of a ship as the installation of insulation; hence, Mr. Volpe was as involved in a traditional maritime activity as the successful plaintiffs in *White.*

*White v. Johns-Manville, supra,* does not, however, govern our disposition of this case. We find the views of the Ninth Circuit Court of Appeals as expressed in *Owens-Illinois, Inc. v. United States District Court,* 698 F.2d 967 (9th Cir.1983) and the views of the First Circuit Court of Appeals given in *Austin v. Unarco Industries, Inc.,* 705 F.2d 1 (1st Cir.1983) more persuasive than *White.*

The *Owens-Illinois* litigation began with the claim of one Wayne Plunkett, who filed suit to recover for personal injuries allegedly caused by exposure to asbestos products made by Owens-Illinois and other defendants. Plunkett argued that admiralty jurisdiction applied to his suit because he suffered substantial exposure to asbestos during his employment in a shipyard. The exposure occurred when Plunkett worked with and around asbestos products in the boiler rooms of ships under construction, which ships had been launched but not completed when Plunkett worked on them.

The Court of Appeals for the Ninth Circuit stated that Plunkett's service aboard ships floating in navigable waters satisfied the locality test, but went on to note that the maritime location of a tort no longer suffices to invoke admiralty jurisdiction. It was thus necessary to decide whether the alleged injury to Plunkett arose in the course of a traditional maritime activity.

The court wrote:

To determine whether an alleged tort bears a significant relationship to traditional maritime activity, we must consider four factors: (1) traditional concepts of the role of admiralty law; (2) the function and role of the parties; (3) the types of vehicles and instrumentalities involved; and (4) the causation and nature of the injury suffered. *T.J. Falgout Boats, Inc. v. United States,* 508 F.2d 855, 857 (9th Cir.1974), *cert. denied,* 421 U.S. 1000, 95 S.Ct. 2398, 44 L.Ed.2d 667 (1975).

*Owen-Illinois, supra,* at 970. The Ninth Circuit Court of Appeals applied these concepts and concluded that admiralty jurisdiction did not lie. In its examination of the first factor, the court resorted to the traditional distinction between contracts for the repair of vessels, which are governed by admiralty law, and contracts for the construction of new vessels, which are not governed by admiralty law. Plunkett's alleged injuries occurred as he worked on new ships; therefore, the tort alleged lacked the maritime flavor necessary to invoke admiralty jurisdiction. *Id.* at 970.

The court continued:

Nor does an examination of the other factors persuade us of a significant maritime quality to the claims asserted here. Plaintiff's job, installing and cleaning up around the installation of asbestos, is hardly a distinctively maritime role, in contrast to the navigational functions of the crew of a ship engaged in ocean or river shipping. While ships were obviously involved here, the tools and safety equipment (or lack thereof) present in the installation and clean-up of asbestos—unlike the navigational equipment and safety devices of a vessel—possess few maritime attributes. The use of masks, unlike the provision of lifeboats, is hardly a precautionary measure distinctively connected to traditional maritime activity. Finally, the nature of the injury, an asbestos-related disease, and its causation, the unprotected inhalation of asbestos fibers, bear little maritime connection. Both the injury and its cause are far more closely affiliated with the clearly land-based negligence arising in the construction industry

generally than with negligence taking place in commerce and navigation on the navigable waters.... We conclude that plaintiff's claims do not bear a significant relationship to traditional maritime activity and that admiralty jurisdiction is therefore lacking.

*Owens-Illinois, supra,* at 970–71 (citations omitted).

■ When we apply the reasoning of the circuit court to the case now before us we come to a similar result. At the Philadelphia Navy Yard, Mr. Volpe spent seventy percent of his time on ships with seventy-five percent of that time on repair and twenty-five percent devoted to new construction. Reproduced Record at 42a. Clearly, Mr. Volpe's service at the Navy Yard was on ships in navigable waters; the locality test of *Executive Jet Aviation* is thus satisfied.

■ There is not, however, the maritime nexus required to invoke admiralty jurisdiction.

We agree with the Ninth Circuit Court of Appeals that installing and cleaning up around the installation of asbestos insulation is not a distinctively maritime role. Mr. Volpe's duties as a welder involved the use of asbestos blankets to protect ship equipment in the areas where he worked and also involved cutting through asbestos insulation while welding. Reproduced Record at 110a–113a. Welding, even welding necessary to the function of a ship, is not a distinctively maritime role. Mr. Volpe argues that rejecting his claim because welding is not exclusively a maritime occupation would mean "that a ship's cook, one who performs a traditional maritime function, would be denied the protection of admiralty law simply because there are cooks working in many non-ship locations...." Brief for Appellant at 7.

This argument is not well taken. Ships' cooks are protected in admiralty law not because they are cooks, but because they cook on board a vessel and thus face not only the hazards common to cooking but also the perils of sailing navigable waters. Mr. Volpe did not face the dangers inherent in traveling upon the seas or navigable lakes and

rivers. The First Circuit Court of Appeals noted that the unseaworthiness remedy of admiralty was meant to protect seamen and those performing seamen's duties:

> Seamen are the wards of admiralty, and the policy of the maritime law has ever been to see that they are accorded proper protection by the vessels on which they serve.... [Thus] the owners owe[ ] to the seamen the duty of furnishing a seaworthy vessel and safe and proper appliances in good order and condition; and ... for failure to discharge such duty there [is] liability on the part of the vessel and her owners to a seaman suffering injury as a result thereof. *The State of Maryland*, 85 F.2d 944, 945, 4th Cir.1936, *quoted in Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 91–92 n. 9, 66 S.Ct. 872, 875–876 n. 9, 90 L.Ed. 1099 (1946).

Two observations may be made about the application of this policy. The first is that unseaworthiness can arise not only from something as nautical as a faulty anchor windlass but from something as unmaritime as the presence on a ship of a hazardous chemical. *See, e.g., Smith v. Ithaca Corp.*, 612 F.2d 215 (5th Cir.1980) (unseaworthiness claim based on seaman's exposure to benzene fumes escaping from the ship's storage tanks); *Martinez v. Dixie Carriers, Inc.*, 529 F.2d 457 (5th Cir.1976) (unseaworthiness claim based on exposure to noxious fumes escaping from the chemical tank of a barge).

A second, and perhaps more immediately pertinent observation is that the policy protects not only seamen but, by judicially created extension, those who are serving the same functions as seamen would serve; otherwise a vessel owner might be able to frustrate the policy by subcontracting chunks of a seaman's job to others. But the limits of the extension are narrowly circumscribed.

The seaworthiness remedy has been extended to some harbor workers, *see Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946); *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953), but only if those harbor workers were injured

while doing work traditionally done by members of the crew and thus, presumably, subject to many of the same hazards as seamen, *see United New York and New Jersey Sandy Hooks Pilots Ass'n v. Halecki,* 358 U.S. 613, 79 S.Ct. 517, 3 L.Ed.2d 541 (1959). *See also West v. United States,* 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161 (1959) (focus should be upon the status of the ship, the pattern of the repairs, and the extensive nature of the work contracted to be done); *Waganer v. Sea-Land Service, Inc.,* 486 F.2d 955, 958 (5th Cir.1973) (two-fold requirement for unseaworthiness recovery: "(i) the ship in question must have been in navigational status, and not 'dead', which in turn depends upon whether the contracted work is minor or major, and who has custody and control of the ship while the work is being done; and (ii) the pattern of repair must reflect work traditionally and ordinarily done by seamen, excluding persons performing such tasks as making major repairs requiring drydocking or special skills").

The distinctions drawn in the seaworthiness context, according to the work performed by the injured party and the hazards encountered by him, counsel against admiralty jurisdiction in this case. Under the tests set-out above, plaintiff's decedent would plainly be excluded. The ships on which he worked were out of navigation and the work was major, requiring special equipment and skills. It was not work traditionally done by members of the crew. More important, if the reason for admiralty's special concern for the care and safety of seamen is that they are exposed to the peculiar hazards of the sea and a vessel's equipment, then the dangers faced by a shipyard worker installing asbestos insulation are scarcely traditional concerns of admiralty or is there any reason to expect an admiralty court to possess expertise in addressing those dangers.

*Austin v. Unarco Industries, Inc.,* 705 F.2d 1, 12–13 (1st Cir.1983) (footnote omitted).

Further, Mr. Volpe worked on vessels in a shipyard, not on ships in active service. As Mr. Volpe explained in a deposition, he was exposed to asbestos in the course of "ripouts"; during a ripout, shipyard workers cut through a ship's decks so that machinery can be removed for repair. Slicing through a ship's decks is major work, requiring special skills and equipment. A ship's crew would not perform a ripout. Therefore, Mr. Volpe was not performing a traditional seaman's role when he was exposed to asbestos.

■ The causation and nature of the injury suffered also weigh against the grant of admiralty jurisdiction. Assuming arguendo that Mr. Volpe's asbestosis was caused exclusively by his exposure to asbestos at the Navy Yard, the injury he suffered was the same as he would have suffered had he worked on boilers in a factory on dry land. Mr. Volpe's peril was not created by any hazard of the sea and there is no need to invoke the special expertise of admiralty courts.

■ For all of the foregoing reasons, we hold that admiralty jurisdiction does not lie in this case. Our judgment is reinforced by the concerns expressed by the Supreme Court in cases determining the limits of admiralty jurisdiction. In *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 269–70, 93 S.Ct. 493, 505, 34 L.Ed.2d 454 (1972), the Court stated:

> The law of admiralty has evolved over many centuries, designed and molded to handle problems of vessels relegated to ply the waterways of the world, beyond whose shores they cannot go. That law deals with navigational rules—rules that govern the manner and direction those vessels may rightly move upon the waters. When a collision occurs or a ship founders at sea, the law of admiralty looks to those rules to determine fault, liability, and all other questions that may arise from such a catastrophe. Through long experience, the law of the sea knows how to determine whether a particular ship is

seaworthy, and it knows the nature of maintenance and cure. It is concerned with maritime liens, the general average, captures and prizes, limitation of liability, cargo damage, and claims for salvage.

See also *Foremost Insurance Co. v. Richardson,* 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982), wherein the Court explains that the need for uniform rules for navigable waters is an important factor in limiting admiralty jurisdiction. In this case, there is no comparable need for uniformity sufficient to displace state law.

Because admiralty jurisdiction does not lie in this case, we believe that summary judgment in favor of Defendants was properly granted.

Pa.R.Civ.P. 1035(b) provides that a ruling on a motion for summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Judge Takiff found that by December 1973, Mr. Volpe knew of his injury, asbestosis, the operative cause of his injury, inhalation of asbestos dust and fibers, and the causal connection between his injury and his exposure to asbestos at work. Mr. Volpe and his wife were also aware of the names of asbestos manufacturers. Yet Volpe and his wife did not file their amended complaint until September 1977, well over three years after Mr. Volpe knew all he needed to know to bring an action. We agree with the judge below that once Mr. Volpe knew these facts, he had the ability to investigate and pursue his claim. The running of the statute of limitations cannot be postponed until a claimant actually does pursue a suit without contravening the very purpose of limitations on actions. Mr. Volpe's claim is clearly barred by the statute of limitations.

Order affirmed.