482 A.2d 1067

**Lillian BERARDI, Executrix of the Estate of Domenic Berardi, Deceased and Lillian Berardi, in her own right, Appellants**

v.

**JOHNS–MANVILLE CORPORATION, Johns-Manville Sales Corporation, Raybestos Manhattan, Inc., Forty Eight Insulation, Inc., Nicolet Industries, Inc., Pittsburgh Corning Corporation, GAF Corporation, Armstrong Cork Company, Unarco Industries, Inc., H.K. Porter Co., Inc., Southern Asbestos Company, Eagle-Picher Industries, Inc., Fibreboard Corporation, Pabco Industrial Products Division, Keene Corporation, Certain-Teed Products Corp., Pacor, Inc., Celotex Corporation, Amatex Corporation.**

Superior Court of Pennsylvania.

Argued June 26, 1984.

Filed Oct. 5, 1984.

Petition for Allowance of Appeal Denied Feb. 22, 1985.

Robert Paul, Philadelphia, for appellants.

James L. McKenna, Philadelphia, for appellees.

Before OLSZEWSKI, POPOVICH and CERCONE, JJ.

POPOVICH, Judge:

This is an appeal by Lillian Berardi, Executrix of the Estate of Domenic Berardi, Deceased, and Lillian Berardi, in her own right, appellants, from the entry of an order in the Court of Common Pleas for the County of Philadelphia, in favor of appellees, Johns-Manville Corporation, Johns-Manville Sales Corporation, Raybestos Manhattan, Inc., Forty-eight Insulation, Inc., Nicolet Industries, Inc., Pittsburgh Corning Corporation, GAF Corporation, Armstrong Cork Company, Unarco Industries, Inc., H.K. Porter Co., Inc., Southern Asbestos Company, Eagle-Picher Industries, Inc., Fibreboard Corporation, Pabco Industrial Products Division, Keene Corporation, Certain-Teed Products Corp., Pacor, Inc., Celotex Corporation, and Amatex Corporation, granting their motion for summary judgment. We affirm.

Summary judgment should be entered only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Pa.R.Civ.P. 1035. In deciding whether this is

so, a court must view the evidence in the light most favorable to the non-moving party, and enter judgment only if the case is clear and free from doubt.

*Acker v. Palena*, 260 Pa.Super. 214, 393 A.2d 1230 (1978); *Ritmanich v. Jonnel Enterprises, Inc.*, 219 Pa.Super. 198, 280 A.2d 570 (1971).

> The lower court entered summary judgment, holding that Decedent clearly had knowledge of his cause of action no later than March 17, 1976, but suit was not commenced until September 5, 1978, approximately six months after the limitations clock had run.

Opinion, Takiff, J. at 5.

■ Appellants make several claims of error. First, they urge that the Statute of Limitations does not bar the within action.

In the instant action, suit had been instituted by the filing of a complaint on September 5, 1978. The statute of limitations which governed the action was the Act of June 24, 1895, P.L. 236, § 2, 12 P.S. § 34, repealed by Judiciary Act Repealer Act, Act of April 25, 1978, P.L. 202, eff. June 27, 1978, currently codified at 42 Pa.C.S.A. § 5524(2).[1]

Domenic Berardi died on May 6, 1981. On July 9, 1981, his wife and executrix of his estate, was substituted as plaintiff. Judge Takiff sets forth the pertinent facts as follows:

> Plaintiff's decedent, DOMENIC J. BERARDI, worked as a pipefitter at the Philadelphia Naval Shipyard for approximately twenty years between 1941 and 1974. He was admitted to the Hospital of the University of Pennsylvania (HUP) on May 6, 1974, with a pulmonary condition. A letter from his treating physician, Dr. Robert Mayock, a lung specialist, dated May 25, 1974, indicates

---

1. "The following actions and proceedings must be commenced within two years: (2) An action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another.
   [Amended 1982, Dec. 20, P.L. 1409, No. 326, art. II, § 201, eff. in 60 days]

that there had been a previous history of chest disorders which had been followed at the Naval Yard Clinic for the past several years. On his most recent visit decedent was told that he had calcium deposits in his lungs and a repeated series of X-rays were obtained. Decedent's major symptomatology prior to this hospitalization were fatigue and shortness of breath. When Mr. Berardi was discharged on May 10, 1974, the final diagnosis was "pleural asbestosis with obstructive lung disease and hypertensive cardiovascular disease."

On May 31, 1974, Dr. Frank Bove, decedent's family physician, filed a report in connection with Mr. Berardi's disability retirement application in which the diagnosis was, *inter alia,* asbestosis with pleural plaques. Decedent's signature appeared on the topmost part of this form; the bottom part was apparently filled in by his physician. On June 14, 1974, decedent himself filled out a "Notice of Injury or Occupational Disease" for the purpose of receiving Workman's Compensation benefits. He listed the date and hour of injury as prior to June 14, 1974, the cause of injury as working "with asbestos material for 20 years" and the nature of injury as "lungs." Decedent signed this form as well.

A letter of October 11, 1974, from Dr. E. Wayne Marshall to Melvin T. Johnson, M.D., the Staff Medical Officer of the U.S. Civil Service Commission, indicates that decedent saw Dr. Marshall, complaining of chest problems and hypertension. X-rays indicated pleural thickening and plaques and the diagnosis was "probable asbestosis." Marshall proclaimed Mr. Berardi totally disabled. In a second hospitalization at HUP from October 30 to November 2, 1974, there was a final diagnosis of asbestosis and obstructive lung disease.

At his deposition, Mr. Berardi testified that he became familiar with problems related to asbestos exposure, including asbestosis, no later than 1975 by reading newspaper and magazine articles and government literature ... On March 17, 1976, decedent wrote a letter to the U.S.

Department of Labor to indicate that he had been exposed to asbestos in the Naval Yard and that this exposure was undermining his health. Describing the link between his asbestos exposure and resulting physical disability, Mr. Berardi wrote:

"Considerable sawings of the insulation materials was constantly taking place with a constantant floation (sic) of asbestos particles which were the basic ingredients of these insulation materials.

Although we took all advantages of the existing safety precautions against breathing in of these materials, it was relatively impossible to eliminate what we have come to know as a serious hazard of asbestos. I might point out that little seemed to be known about the hazard at that time, and that I was personally unaware that I was falling victim to this disease.

I feel I can support the latter statement by the fact that I was experiencing difficulty in breathing and this was manifested by shortness of breath and pains in my chest, then probably aggravating an existing condition of hypertension."

A Complaint was filed in this action on September 5, 1978.

Appellants herein claim that appellees failed to sustain their burden of showing that appellants possessed the requisite knowledge more than two years before commencement of the within action. They further assert for the first time that the lower court considered forms and letters which were not properly a part of the record to be considered on summary judgment. These exhibits referred to above were (1) letters and reports from physicians; (2) two workmen's compensation forms; and (3) a "Federal employees' notice of injury or occupational disease" form. An additional exhibit, referred to earlier, was a letter written by Berardi himself, which appellants claim does not show that Berardi knew "at that time that he had the specific disease of asbestosis." (Appellants' Brief at 12)

In *Volpe v. Johns-Manville Corp.*, 4 Phila. County Reporter 290, appealed *Volpe v. Johns-Manville Corp.*, 323 Pa.Super. 130, 470 A.2d 164 (1983), the level of knowledge necessary before the statute of limitations begins to run was settled and elucidated as follows:

> With the question of "reasonableness" as a constant qualification running through the decisional law, the principle emerges that three independent phases of knowledge must be known or knowable to plaintiff before the limitations period commences: (1) knowledge of the *injury;* (2) knowledge of the *operative cause* of the injury; and (3) knowledge of the *causative relationship* between the injury and the operative conduct.

4 Phila. County Reporter at 295–296. At this time, the "act heralding a possible tort inflicts a damage which is physically objective and ascertainable." *Ayers v. Morgan*, 397 Pa. 282, 290, 154 A.2d 788, 792 (1959). It is clear that Berardi knew of his disease and its cause at least as early as March of 1976.

In *Staiano v. Johns Manville*, 304 Pa.Super. 280, 450 A.2d 681 (1984), appellants claimed for the first time that exhibits should not have been considered before the lower court because they were "unsworn." The court noted that although the exhibits should have been sworn, the issue was waived since it was not objected to before the lower court. *See* Pa.R.A.P. 301(a). The court observed:

> Here, had appellants argued to the lower court that it should not consider unsworn exhibits, the court, we may assume, would have excluded the exhibits, *Irrera v. SET-P.A*, [231 Pa.Superior Ct. 508, 331 A.2d 705 (1974)], *supra*, in which event appellees might have been able to cure the defect.

304 Pa.Superior Ct. at 293, 450 A.2d at 687. This argument is therefore waived.

Appellants claim not only that the first prong of the *Volpe* test has not been satisfied in that Berardi did not have knowledge of his injury until 1977 when he was informed by the federal government that he had asbestosis

but also, alternatively, that the *Volpe* test is an improper test in that the better formulation is found in *Nolan v. Johns-Manville Asbestos & Magnesna Materials Co., et al.,* 85 Ill.2d 161, 52 Ill.Dec. 1, 421 N.E.2d 864 (1981). That court held that an asbestosis plaintiff's "cause of action accrues when the plaintiff knows or reasonably should know of an injury and also knows or reasonably should know that the injury was caused by the wrongful act of another." 421 N.E.2d at 868. In other words, it is not until the injured person acquires the knowledge that someone's negligent act hurt him that the limitations period begins to run.

The *Volpe* test has been affirmed by this court. *See,* e.g., *Doe v. Johns-Manville Corp.,* 324 Pa.Super. 469, 471 A.2d 1252 (1984); *Volpe v. Johns-Manville Corp.,* 323 Pa.Super. 130, 470 A.2d 164 (1983)[2]; *Staiano v. Johns-Manville Corp.,* 304 Pa.Super. 280, 450 A.2d 681 (1982).

Appellants claim that a jury should have determined when the statute of limitations began to run. It is clear that decedent knew he had asbestosis prior to two years before filing suit. There was, "... no question of fact for the jury." *See Smith v. Bell Telephone,* 397 Pa. 134, 153 A.2d 477 (1959).

This court specifically rejected the argument that the plaintiff must know that he has a cause of action, i.e., that someone is legally culpable,—before the statute of limitations begins to run. *Anthony v. Koppers,* 284 Pa.Super.

---

**2.** In *Cathcart v. Keene Indus. Insulation,* 324 Pa.Super. 123, 471 A.2d 493 (1984), the majority applied a derivative of the *Volpe* test.

> We find that the statute of limitations begins to run in "creeping disease" cases when the plaintiff knows, or reasonably should know: (1) that he has been injured, and (2) that his injury has been caused by another party's conduct. Stating the test in this manner will result in conformity with various other jurisdictions which have addressed this same problem.

324 Pa.Superior Ct. at 136–137, 471 A.2d at 500.

However, Judge Wickersham writes separately to stress that while this test is "not incorrect", the *Volpe* test is less confusing. He notes that *Volpe* "is currently before an *en banc* panel of this court." 324 Pa.Superior Ct. 155 n. 1, 471 A.2d 510 n. 1. *Volpe* was, therefore, decided after *Cathcart* and applies the three-part test.

81, 425 A.2d 428 (1980), reversed on other grounds, 496 Pa. 119, 436 A.2d 181 (1981).

> "once [a plaintiff] possesses the salient facts concerning the occurrence of his injury and *who* or *what* caused it, he has the ability to investigate and pursue his claim. *Volpe v. Johns-Manville, supra* [4 Phila. County Reporter], at 303."

*Staiano v. Johns-Manville Corp.*, 304 Pa.Superior Ct. at 288, 450 A.2d at 685.

■ Next, appellant claims that the lower court erred in dismissing the claims of Lillian Berardi in her own right for loss of marital consortium, emotional distress at witnessing her husband's deterioration, and for further alleged fear of contracting asbestos-related diseases in the future.

The limitations period for a wife's claim for loss of consortium began to run on the same date that her husband's personal injury claim began to run. *Cathcart v. Keene, supra; Staiano v. Johns-Manville, supra.* Moreover, recovery could not be had for emotional distress resulting from the development of an occupational disease. *Cathcart,* 324 Pa.Superior Ct. at 150, 471 A.2d at 507; *Amader v. Johns-Manville Corp.,* 514 F.Supp. 1031 (F.D. Pa.1981). "Clearly the Supreme Court of Pennsylvania contemplated a discrete and identifiable traumatic event to trigger recovery." *Id.* 514 F.Supp. at 1032.

With respect to appellants' claim that Mrs. Berardi had been exposed to asbestos dust brought home by her husband, and, therefore, was in fear of contracting asbestos-related diseases, this Court held in *Cathcart*

> [A]ppellants argue, however, that Mrs. Cathcart did suffer injury in that she ingested asbestos fibers brought home by her husband on his clothes.... Her allegation is basically only that she "undoubtedly ingested" asbestos fibers in laundering her husband's clothes over the years. We agree with the lower court that until Thelma Cathcart is able to allege some physical injury or some medically-identifiable effect linked to her exposure to

asbestos particles, her claim for negligent infliction of emotional distress is not legally cognizable.

*Cathcart*, 324 Pa.Superior Ct. 151–152, 471 A.2d 509. Mrs. Berardi's only allegation is that she "is waiting for an inevitable process to occur to render her injuries noticeable on an x-ray." (Appellants' Brief at 30) Appellants argue that the lower court failed to consider *Papieves v. Kelly*, 437 Pa. 373, 263 A.2d 118 (1970) when it dismissed their claim. That case involved a claim for *intentional* infliction of emotional distress.[3]

> In *Papieves*, citing the Restatement (Second) Torts, § 46 (1965), our Supreme Court noted that "[t]he law has only recently recognized that the freedom from mental distress directly caused by wanton or outrageous conduct is entitled to legal protection independent of any other cause of action ...." 437 Pa. at 378, 263 A.2d at 121.

As in *Cathcart*, we are unable to determine whether a claim for intentional infliction of emotional distress was raised in the lower court, and, therefore, will not consider that claim. It should be noted that it was not addressed by Judge Takiff. Moreover, appellants claim that *Plummer v. U.S.*, 580 F.2d 72 [4] (3rd Cir.1978) is "on all fours with plaintiff Lillian Berardi's claims for mental distress at discovering the risks to her own future health." As in *Cathcart*

> We find *Plummer* to be readily distinguishable. In the case before us, Mrs. Cathcart has demonstrated no physical manifestation of disease whatsoever.

■ Appellants further claim that the lower court erred in failing to hold that the injuries from asbestos are continu-

---

3. Negligent infliction of emotional distress normally requires physical injury under Restatement of Torts § 436(2) unless it can be fit into the confines of *e.g. Niederman v. Brodsky*, 436 Pa. 401, 261 A.2d 84 (1970) or *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979). *See infra* this page.

4. In *Plummer v. United States*, 580 F.2d 72 (3rd Cir.1978), it was alleged that prison authorities had negligently permitted a prisoner with an active case of tuberculosis to mingle among the general prison population, exposing the plaintiffs to the risk of contracting tuberculosis. Medical tests had disclosed that, although the plaintiffs were suffering no symptoms, their bodies were actually harboring dormant tubercle bacilli, which necessitated a precautionary year-long treatment with drugs.

ing injuries, citing *Daniels v. Beryllium Corp.*, 211 F.Supp. 452 (E.D.Pa.1962)

> Appellants have not alleged that appellant-husband's condition was aggravated by further exposure to asbestos during the two years prior to his suit. Since appellants have not alleged a claim within *Daniels v. Beryllium, supra*, we are not called upon to decide whether such a claim would have been valid. Even if it would have been, since it was not alleged it was not dismissed by the lower court's entry of summary judgment.

*Staiano v. Johns-Manville*, 304 Pa.Superior Ct. at 296, 450 A.2d at 688.

Moreover, "Appellants in the case before us have not alleged that tortious conduct of the defendants has occurred during the two years prior to filing of the complaint, and we find that the fact that the injuries are continuing ones, caused by the continuous action of asbestos fibers in their homes, is not sufficient to toll the limitations period for any aggravation of their injuries." *Cathcart*, 324 Pa.Superior Ct. at 147, 471 A.2d at 506.

■ Finally, appellants claim that the lower court erred in refusing to permit the complaint to be amended to plead a cause of action in admiralty. Appellant was not

> engaged in activity that bore a significant relationship to traditional maritime activity.

*Gravinese v. Johns-Manville Corp.*, 324 Pa.Super. 432, 471 A.2d 1233 (1984). Therefore, admiralty law is not controlling. *Volpe v. Johns-Manville Corp.*, 323 Pa.Super. 130, 470 A.2d 164 (1983).

Accordingly, we affirm the order of the lower court.

OLSZEWSKI, J., filed a concurring opinion.

OLSZEWSKI, Judge, concurring:

While I agree with the result reached in this case, I voice my concern as to the test applied by the majority to determine when the statute of limitations began to run in appellants' wrongful death action. The majority finds control-

ling the three-prong test expressed in *Volpe v. Johns-Manville Corp.*, 323 Pa.Super. 130, 470 A.2d 164 (1983). I would apply instead the less-complicated two-part test most recently enunciated in *Cathcart v. Keene Industrial Insulation,* 324 Pa.Super. 123, 471 A.2d 493 (1984). Indeed, the *en banc* decision in *Cathcart* was published after *Volpe.* It is therefore our most recent pronouncement on this controversial issue.