134 F.Supp.2d 415 (2001)
IN RE LATEX GLOVES PRODUCTS LIABILITY LITIGATION, MDL 1148.
Jean M. Whitson and Randy S. Whitson, w/h,
v.
Safeskin Corporation, Inc., et al.
CIV.A. No. 97-8084.
United States District Court, E.D. Pennsylvania.
March 8, 2001.
*416 Joanna Hamill Flum, Shrager, Spivey, Sachs & Weinstock, Philadelphia, PA, for plaintiffs.
Eric A. Weiss, Marshall, Walter H. Swayze, III, Dennehey, Warner, Coleman & Goggin, Philadelphia, PA, for Safeskin Corp., Inc., defendant.
*417 David B. Sudzus, Kelley, Drye and Warren, Chicago, IL, for Surgikos, Inc., Johnson & Johnson Medical, Inc., defendants.
Margaret S. Woodruff, Schnader, Harrison, Segal & Lewis, Philadelphia, PA, for Maxxim Medical, Inc., defendant.
Karen Shichman Crawford, Pittsburgh, PA, Marguerite S. Walsh, Buchanan Ingersoll Professional Corp., Philadelphia, PA, for Regent Hosp. Products Ltd., defendant.
Glenn D. Wattenmaker, Kent & McBride, P.C., Philadelphia, PA, for Owens & Minor Medical/Surgical Div., defendant.

MEMORANDUM
LUDWIG, District Judge.
This is a products liability action in which defendants Safeskin Corporation, Inc. and Johnson & Johnson Medical, Inc. move for summary judgment in favor of all defendants based on time bar. Fed. R.Civ.P. 56.[1] Jurisdiction is diversity, 28 U.S.C. § 1332, and Pennsylvania law governs substantive issues. The motion will be granted in part and denied in part.
On February 26, 1997, the Judicial Panel on Multidistrict Litigation issued a Conditional Transfer Order, consolidating eight cases for coordinated pretrial proceedings, 28 U.S.C. § 1407. The basis for the order was that "all actions before the Panel present complex common questions of fact on the issue of liability for severe toxic reactions allegedly developed by medical personnel as a result of exposure to the latex found in latex gloves used in their profession." Conditional Transfer Order, Feb. 26, 1997. Since that time, approximately 440 actions have been transferred to the Eastern District of Pennsylvania.[2] On September 11, 2000, upon conference and agreement of the parties, six cases, including the present action, were selected for trial in this district. See Case Management Order 63.
In this lawsuit, defendant manufacturers and distributors are sued on theories of negligence; strict liability; breach of express and implied warranties; fraudulent concealment; and loss of consortium. Defendants argue that: (1) the tort-based claims are barred by the two-year statute of limitations; and (2) the breach of warranty claims are deficient because of lack of timely notice  and, in any event, those claims for gloves sold prior to December 27, 1993 cannot survive the four-year statute of limitations.[3]

I. Background

From April 21, 1990 to June 25, 1998, plaintiff Jean Whitson, now age 45, was employed as a registered nurse at Hanover Hospital, in Hanover, Pa. As a nurse, she used and was exposed to natural rubber latex gloves. Cmplt. ¶¶ 20-22. In the fall of 1995, she began experiencing facial swelling, shortness of breath and heart palpitations. On October 27, 1995, she consulted an allergist, Gregory B. Lanpher, *418 M.D.[4] Whitson dep. at 86; Lanpher dep. at 15. After completing an examination, Dr. Lanpher requested she bring back a sample of gloves worn by her at work in order to rule out latex sensitivity. Whitson dep. at 270; Lanpher dep. at 57; Lanpher-3, defs. exh. B.
On October 30, 1995, prior to her next visit to Dr. Lanpher, she completed an Employee Accident Report. In the report, she wrote that "over several months" she had experienced "severe itching of hands and hives/welts  use of powdered latex gloves."[5] Accident report, defs. exh. C. She also noted that in using powder-free gloves for the past month, she had developed "intense itching, red and welts on hands, esp. @ areas of broken skin." Id.
On November 1, 1995, plaintiff met with Susan Ambrosius, R.N., an employee health nurse at Hanover Hospital.[6] Ambrosius dep. at 25. Ambrosius supplemented the Employee Accident Report as follows:
Nature and extent of injury: Local/systemic reaction to both hands: itchy, red, hives, welts following extended time period wearing latex gloves.
* * * * * *
What action is being taken to prevent reoccurrence? Jean is seeing allergist. We have provided non-Latex gloves + have counceled [sic] her on avoidance of Latex as much as poss[ible.]  e.g., stay clear of/leave room where employees are putting on or taking off Latex gloves[.]
Accident report, defs. exh. C; Ambrosius dep. at 25-27.
On November 1, 1995, plaintiff returned to Dr. Lanpher's office for latex allergy testing. Lanpher dep. at 58. Dr. Lanpher testified that he conducted a skin-prick and intradermal test for four different glove types  Baxter, Stuart, and Safeskin powder-free, and Safeskin light powder; the test results were positive for all types.[7]Id. at 74-75. According to Dr. Lanpher, he was certain that she was sensitive to latex, and he told her so at that time.[8]Id. at 79, 85-86.
*419 On December 15, 1995, plaintiff again visited Dr. Lanpher, and his notes recite that she had been avoiding the use of latex and had observed a decrease in her symptoms.[9] Lanpher dep. at 86-88; Whitson dep. at 122. Also on that date, Dr. Lanpher ordered a "RAST."[10] In her deposition testimony plaintiff denied that she was aware of her allergenicity prior to that time, and stated she understood the purpose of the RAST was to test for latex allergy.[11] Whitson dep. at 52, 232. In early January, 1996, the RAST results, which confirmed Dr. Lanpher's "original diagnostic impression,"[12] were reported to plaintiff. Whitson dep. at 229; Lanpher dep. at 86.
On December 29, 1997, the complaint was filed.

II. Discussion

A. Pennsylvania's statute of limitations for tort claims
Plaintiffs' tort claims are subject to Pennsylvania's two-year statute of limitations, 42 Pa.C.S.A. § 5524.[13] Defendants maintain that the limitations period began running on October 30, 1995, when plaintiff connected her symptoms with latex gloves and the claims, therefore, are time-barred. Defs. mem. at 5. Plaintiffs' position is that *420 the statutory period did not start until the causal connection between her condition and defendants' tortious conduct was discovered by her in 1996, and not when the symptoms first appeared.[14] Pltfs. mem. at 9.
Familiarly, under Pennsylvania law, "the statute of limitations begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations[.]" Pocono Int'l Raceway, Inc. v. Pocono Produce, 503 Pa. 80, 84, 468 A.2d 468, 471 (1983). Although the general rule is that a cause of action accrues when the wrongful conduct occurs, a judicially-created exception, the "discovery rule," was developed to "ameliorate the [statute's] sometimes-harsh effects[.]" Cathcart v. Keene Indus. Insulation, 324 Pa.Super. 123, 135, 471 A.2d 493, 500 (1984). The rule "arises from the inability of the injured, despite the exercise of due diligence, to know of the injury or its cause." Pocono Int'l Raceway, 503 Pa. at 85, 468 A.2d at 471; see also Ayers v. Morgan, 397 Pa. 282, 292, 154 A.2d 788, 793 (1959).
Under the discovery rule, the running of the limitations period is tolled until a plaintiff knows or reasonably should know: (1) that he or she has been injured; and (2) that the injury was caused by another's conduct.[15]Crouse v. Cyclops Indus., 560 Pa. 394, 404, 745 A.2d 606, 611 (2000) (citing Pearce v. Salvation Army, 449 Pa.Super. 654, 657-59, 674 A.2d 1123, 1125 (1996)); see Bohus v. Beloff, 950 F.2d 919, 924 (3d Cir.1991) (quoting Cathcart, 324 Pa.Super. at 136-37, 471 A.2d at 500). Tolling ceases when plaintiff has "sufficient critical facts" to place her on notice that a tort has been committed and that prudence dictates further investigation into the matter. Pearce, 449 Pa.Super. at 657-59, 674 A.2d at 1125. A plaintiff is required to use reasonable diligence to ascertain the facts and circumstances on which the right of recovery is based and to institute suit within the prescribed period. Hayward v. Medical Center of Beaver County, 530 Pa. 320, 324, 608 A.2d 1040, 1042 (1992). Moreover, a plaintiff "need not know the exact medical cause of the injury, ... that his [or her] injury is due to another's negligent conduct, ... or that he [or she] has a cause of action," to initiate *421 the limitations period. Bohus, 950 F.2d at 925 (citations omitted); see A. McD. v. Rosen, 423 Pa.Super. 304, 309, 621 A.2d 128, 131 (1993).
Here, plaintiff wife concedes that in the fall of 1995, she became aware of her allergenic injury. Pltfs. mem. at 7. At that time, she "began to develop allergic problems. Her face and eyes swelled, her eyes watered, she developed tachycardia and her throat and chest felt swollen." Id. The operative inquiry is, therefore, whether by December 29, 1995, plaintiff knew, or reasonably should of known, that her injury was caused by the conduct of another.
Plaintiff's knowledge as of November 1, 1995, that her condition was attributable to latex gloves, is not disputable. On that date, Dr. Lanpher, using gloves from her work-place, tested her and found she was latex-sensitive. He testified that he communicated the positive test results to her. While she disputes that a diagnosis of allergenicity was made at that time, the Employee Accident Form submitted by her to her employer a few days before belies her contention that she did not realize the cause of her allergic problems. As a registered nurse, she associated her severe hand itching with the use of powder and powder-free latex gloves. Moreover, around that time, she completely discontinued the use of latex gloves at Hanover Hospital and utilized non-latex gloves only. Whitson dep. at 151-52; pltfs. mem. at 8.
Plaintiffs' position  that the statute of limitations was tolled until she learned that her reaction to the gloves was a direct result of the defective manufacturing process used to produce the gloves  misconstrues Pennsylvania law.[16] Pltfs. mem. at 8. "[U]nder the Pennsylvania discovery rule, there is no requirement that the plaintiff reasonably discover that his injury has been caused by the negligent conduct of another." Bickford v. Joson, 368 Pa.Super. 211, 218, 533 A.2d 1029, 1032-33 (1987) (citations omitted); see Baumgart v. Keene Building Products Corp., 542 Pa. 194, 200 n. 1, 666 A.2d 238, 240 n. 1 (1995) (plaintiff needs to recognize "only that the injury was caused by the conduct of another"). Rather, knowledge of an injury's physical cause  here, the gloves  triggers the limitations period. *422 See Grabowski v. Turner & Newall, 516 F.Supp. 114, 118 (E.D.Pa.1980) ("Plaintiff must be able to recognize the physical cause of his injury."). Pennsylvania decisional applications of the discovery rule in "creeping disease" cases are in accord with this result.
For example, in Cochran v. GAF Corp., 542 Pa. 210, 666 A.2d 245 (1995), a products liability action against asbestos manufacturers, plaintiff, was first diagnosed with lung cancer in 1981, but did not ascertain the cause of his condition until 1985. Id. at 218, 666 A.2d at 249. Finding that the "record indicates there was ample evidence to support a diagnosis of asbestos-related lung cancer" in 1981, the four-year lapse was held to have been an unreasonable lack of diligence in determining causation. Cochran focused on when plaintiff should have been alerted that the cause of his cancer was "asbestos-related," not the discoverability of defendants' manufacturing defects. Id.
This distinction was confronted directly in Staiano v. Johns Manville Corp., 304 Pa.Super. 280, 450 A.2d 681 (1982), in which plaintiffs argued that the limitations period did not begin until they were aware of the "proper parties to sue" and "the identities of other potential defendants." Id. at 288, 450 A.2d at 684. In response, the opinion stated:
`[O]nce [a plaintiff] possesses the salient facts concerning the occurrence of his injury and who or what caused it, he has the ability to investigate and pursue his claim.' Here, it is enough that appellant  husband knew that his asbestosis was caused by the inhalation of the dust emanating from the asbestos products on the work site. We find no reason to postpone the commencement of the statute until a plaintiff has in addition discovered who manufactured the products. Indeed to do so would `nullify the justifiable rationale of the statute of limitations and permit the prosecution of stale claims.'
Id. at 288-89, 450 A.2d at 685 (quoting Volpe v. Johns-Manville, 4 Phila.Co.Rptr. 290, 303, 324 (1980), aff'd 323 Pa.Super. 130, 470 A.2d 164 (1983)). Here, the evidence was that plaintiff as of November 1, 1995 knew her allergenic injury resulted from the use of latex gloves, which initiated the limitations period as a matter of law.
"Where the issue involves a factual determination regarding what constitutes a reasonable time for the plaintiff to discover his injury and its cause, the issue is usually for the jury." Cochran, 542 Pa. at 215, 666 A.2d at 248 (citations omitted). But where "the facts are so clear that reasonable minds cannot differ, the commencement period may be determined as a matter of law." Id. Inasmuch as no triable issue exists at this point, plaintiffs' tort-based claims must be dismissed.

B. Reasonable notice of warranty claims
Under the Pennsylvania Commercial Code, within a reasonable time after discovery or constructive discovery of the breach, the buyer must "notify the seller ... or be barred from any remedy."[17] 13 Pa.C.S.A. § 2607(c)(1); Uniform Commercial Code § 2-607(3)(a). According to defendants, because notice in this case was not given until the complaint was filed  more than two years after discovery of the alleged breach  the notice was untimely. Plaintiffs' position is that notice was provided within a reasonable time from discovery *423 of defendants' defective manufacturing process.
"What is a reasonable time for taking any action depends on the nature, purpose, and circumstances of such action." 13 Pa. C.S.A. § 1204(b). The notice condition "is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy." 13 Pa.C.S.A. § 2607(c)(1) cmt. 4. The policies behind requiring notification have been stated as: (1) opening the way for settlement through negotiations between all parties; and (2) minimizing the possibility of prejudice to the seller by allowing ample opportunity to cure the defect, inspect the goods, investigate the claim, or do whatever may be necessary to properly defend or minimize damages while the facts are fresh in the minds of the parties. Standard Alliance Indus. v. Black Clawson, 587 F.2d 813, 826 (6th Cir.1978) (citations and quotation omitted). Our Court of Appeals has recognized that prejudice to the seller caused by the delay is also a relevant consideration. Pritchard v. Liggett & Myers Tobacco Co., 295 F.2d 292, 298 (3d Cir.1961) (10-month delay was not unreasonable as a matter of law); see also Boyes v. Greenwich Boat Works, Inc., 27 F.Supp.2d 543, 551 (D.N.J.1998) (citing Pritchard).
Defendants challenge the applicability of Pritchard because there the delay was also justifiable by reason of the consumer's significant health problems, which, purportedly, are not present here. Nevertheless, defendants have not shown prejudice, and "[t]he lack of prejudice is best manifested by the vigorous and thorough defense presented." Pritchard, 295 F.2d at 298. "Where more than one inference may be drawn from undisputed facts, or the facts are disputed, the timeliness and sufficiency of a notice of breach of warranty are questions for the jury to resolve." Id. In these circumstances, the issue must be submitted to a fact-finder.

C. Pennsylvania's statute of limitations for breach of warranty
Plaintiffs' warranty claims are governed by Pennsylvania's four-year statute of limitations. 13 Pa.C.S.A. § 2725.[18] Warranty claims accrue on the date the seller tenders delivery of the goods, and the tort discovery rule is inapplicable. See Northampton County Area Community College v. Dow Chemical, U.S.A., 389 Pa.Super. 11, 27-28, 566 A.2d 591, 599 (1989). It is conceded that some of plaintiffs' claims are based on delivery of latex gloves on or after December 27, 1993. Claims based on deliveries before that date are time-barred.
NOTES
[1] Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The movant must show that there is no triable issue of fact. The nonmovant having the burden of proof at trial must point to affirmative evidence in the record  and not simply rely on allegations or denials in the pleading  in order to defeat a properly supported motion. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); Crissman v. Dover Downs Entertainment, Inc., 239 F.3d 357, 360-61 (3d Cir.2001).
[2] Another 227 latex gloves cases are now pending in state courts.
[3] Plaintiffs agreed to withdraw the breach of express warranty claim. Pltfs. mem. at 4 n. 1.
[4] According to plaintiff (references to "plaintiff" are to Jean Whitson), she went to Dr. Lanpher because she "had been having episodes at work where my face would swell, my eyes would swell, I'd get flushed, short of breath, my heart would race and I didn't know what was causing it." Whitson dep. at 86.
[5] Plaintiff signed the report on November 1, 1995.
[6] Ambrosius stated that, while she did not recall the meeting, based on the Employee Accident Report, dated November 1, 1995, she presumed it occurred then. Ambrosius dep. at 24-25.
[7] Although the skin prick test produced negative results for the Baxter and Safeskin powder-free gloves, the intradermal test produced positive results. Lanpher dep. at 75.
[8] Dr. Lanpher testified:

Q: Well, were you convinced that she was latex sensitive on 11/1/95?
A: Yes.
Q: Are you convinced that she was latex allergic on November 1, 1995?
A: Yes.
Q: Are you convinced that she was aware on November 1, 1995 that she was both sensitized and allergic to natural rubber latex?
A: Yes. But I was not convinced that she was anaphylactic to it.
Lanpher dep. at 79. He also stated that on November 1, 1995 he told her that her contact with natural rubber latex could cause her to experience Type I or Type IV allergic reactions. Id. at 85-86.
Defendants submitted deposition testimony of Dr. Lanpher's employees: Linda Lightly, L.P.N.; Jacey Leisenring, R.N.; Linda McIntyre, M.A.; and Christine LeCrone, M.A. Portions of the testimony of Lightly and Leisenring related to office procedure in informing patients of test results. Lightly dep. at 44-45; Leisenring dep. at 10-13. McIntyre testified that she took notes during Dr. Lanpher's examination of plaintiff, and that any impression as to allergy made by Dr. Lanpher would have been related immediately to the patient. McIntyre dep. at 5-6, 12-13. LeCrone testified that on November 1, 1995, she received a call from plaintiff, who complained of "itching everywhere and tightness in her chest," which plaintiff attributed to the use of latex gloves. LeCrone dep. at 9-11.
[9] According to plaintiff, in late 1995, she stopped wearing latex gloves because her "hands were irritated from having gloves on for an extended length of time while [she] was waiting for a patient who had fallen and had a very bloody nose." Whitson dep. at 152.
[10] RAST: Radioallergosorbent test. The RAST was done by an annex of York Hospital, and not at Dr. Lanpher's office. Whitson dep. at 53.
[11] But plaintiff admits that on November 29, 1995, she told her gynecologist, Stephen A. Naymick, D.O., that latex was a "suspected problem." Whitson dep. at 232. Dr. Naymick's office notes reflect that plaintiff was allergic to latex. Naymick dep. at 15; Naymick-1, defs. exh. E. Jennifer Lawrence, M.A., testified that she recorded the patient history appearing in Dr. Naymick's recordsthat plaintiff "was allergic to all latex." Lawrence dep. at 15-16.
[12] Dr. Lanpher testified that the purpose of the RAST was to confirm his clinical impression:

Q: What, Doctor, are the elements of making a determination as to whether someone was latex allergic in October 1995?
A: The history and then we would usewe would attempt to use either a RAST test in combination with a skin test.
Q: If a person tests positive for latex on a skin test, is that conclusive of the fact that they're sensitized or allergic to latex?
A: Within a reasonable degree of medical certainty.
Q: It is to a reasonable degree of medical certainty?
A: In my opinion, yes.
Q: What is the significance of a subsequent RAST test in the context of a clinical or objective diagnosis of latex allergy?
A: It's just confirmatory.
Lanpher dep. at 50-51.
[13] Section 5524:

The following actions and proceedings must be commenced within two years:
* * * * * *
(7) Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter.
42 Pa.C.S.A. § 5524(7). Here, the statute of limitations applies to negligence (count one); strict liability (counts two and three); fraudulent concealment (count five); and loss of consortium (count six).
[14] "[T]he statute in this case began to run not in October, 1995, when Mrs. Whitson first began to experience symptoms of latex allergy, or on November 1, 1995, when the skinprick testing was first performed by Dr. Lanpher, but rather in 1996 at the earliest[,] when Mrs. Whitson first learned that she had suffered an injury as a direct result of the defendants' wrongdoing." Pltfs. mem. at 9.

However, plaintiffs do not articulate what additional facts, if any, were discovered in 1996 regarding the manufacturing process used by defendants to produce the gloves.
[15] This formulation of the test first appeared in Cathcart v. Keene Indus. Insulation, 324 Pa.Super. at 136-37, 471 A.2d at 500. It is a modification of Volpe v. Johns-Manville Corp., 323 Pa.Super. 130, 141, 470 A.2d 164, 170 (1983), aff'g 4 Phila.Co.Rptr. 290 (1980), which activated the statute of limitations upon (1) knowledge of the injury; (2) knowledge of the operative cause of the injury; and (3) knowledge of the causal relationship between the injury and the operative conduct. The Cathcart test has been widely accepted in Pennsylvania in "creeping disease cases."

In a creeping disease case, symptoms of an injury caused by exposure to hazardous substances are not immediately apparent, making it "difficult to determine at what point the exposure caused the disease, and after the disease has been contracted, to discover its cause." Anthony v. Koppers Co., Inc., 284 Pa.Super. 81, 93, 425 A.2d 428, 434 (1980), rev'd on other grounds, 496 Pa. 119, 436 A.2d 181 (1981). Contrary to defendants' contention, because exposure to the latex gloves is alleged to have resulted in allergenicity and subsequent symptomology, the disease, or injury, can be described as "creeping."
[16] Plaintiffs note that a California appeals court reversed a grant of summary judgment in favor of defendants in a factually similar case, involving a nurse's putative products liability class action against latex glove manufacturers. See Clark v. Baxter Healthcare Corp., 100 Cal.Rptr.2d 223, 83 Cal.App.4th 1048 (2000). There, the court restated the discovery rule for tolling the one-year statute of limitations in California:

[I]t is not enough to commence the running of the limitations period when the plaintiff knows of her injury and its factual cause (or physical cause). Rather, the plaintiff must be aware of her injury, its factual cause, and sufficient facts to put her on inquiry notice of a negligent cause.
Id. (citing Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1109-1114, 245 Cal.Rptr. 658, 751 P.2d 923 (1988)). Clark found that "triable issues of fact have been raised regarding her knowledge or awareness that a defendant's wrong-doing may have affected the product, latex gloves, that was giving rise to her allergies." Clark, 100 Cal.Rptr.2d at 230. In this regard, the delineation of the California law differs from Pennsylvania's.
Plaintiffs also cite Daniels v. Beryllium Corp., 227 F.Supp. 591 (E.D.Pa.1964) for the proposition that the limitations period accrues only when the causal connection between a plaintiff's injury and a particular defendant's wrongful conduct is discovered. Insofar as Daniels may be read to support that conclusion, it is inconsistent with current Pennsylvania law. See note 15, supra. Plaintiffs' reliance on Bayless v. Philadelphia Nat'l League Club, 579 F.2d 37 (1978) is also unpersuasive. Bayless recognized that the limitations period begins when a plaintiff "can reasonably determine what or who hurt him," which, if anything, supports invoking the time bar in this case. Id. at 41.
[17] "Where a tender has been accepted: (1) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy...." 13 Pa.C.S.A. § 2607(c)(1).
[18] Section 2725:

(a) General rule.  An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.
(b) Accrual of cause of action.  A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.
13 Pa.C.S.A. § 2725.