450 A.2d 681

**Carman STAIANO and Rita Staiano, his wife, Appellants,**

v.

**JOHNS MANVILLE CORP., and Johns Manville Sales Corp. and Raybesto Manhatten, Inc. and Owens-Corning Fiberglas Corp. and Forty-Eight Insulation, Inc., and Nicolet Industries, Inc., and Pittsburgh Corning Corporation and Celotex Corp., and Armstrong Cork Company and Unarco Industries, Inc., and H. K. Porter Co., Inc. and Southern Asbestos Company and J. P. Stevens, Inc., and Eagle-Picher Industries, Inc., and Amatex Corp., and Delaware Asbestos and Rubber Company and, Fibreboard Corporation and Pacor, Inc. and Keene Corporation.**

Superior Court of Pennsylvania.

Argued Nov. 4, 1981.

Filed Sept. 3, 1982.

Petition for Allowance of Appeal
Denied Feb. 7, 1983.

282

Robert Paul, Philadelphia, for appellants.

Barbara Markham and Jo Marjorie Fineman, Philadelphia, for appellees.

Before SPAETH, BECK and LIPEZ, JJ.

SPAETH, Judge:

This is an appeal from an order entering summary judgment. The question is whether the lower court erred in finding appellants' claims barred by the statute of limitations. We have concluded that the court did not err, and therefore affirm.

Appellants' action is in trespass and assumpsit and is in four counts: negligence, breach of warranty, strict liability, fraud and conspiracy. Appellant-husband asks damages for personal injuries sustained as a result of occupational exposure to asbestos dust emanating from products manufactured by appellees, and appellant-wife asks damages for loss of consortium. The lower court held, and it is settled, that the two year statute of limitations for "injuries to the

person," 42 Pa.C.S. § 5524(2), applies to each of the four counts. *See, Jones v. Boggs & Buhl, Inc.,* 355 Pa. 242, 49 A.2d 379 (1946); *Shadle v. Pearce,* 287 Pa.Superior Ct. 436, 430 A.2d 683 (1981); *Salvador v. Atlantic Steel Boiler Co.,* 256 Pa.Superior Ct. 330, 389 A.2d 1148 (1978). It is also settled that appellant-wife's consortium claim depends on her husband's claim. Pa.R.Civ.P. 2228(a); *Hopkins v. Blanco,* 224 Pa.Superior Ct. 116, 302 A.2d 855 (1973), *aff'd Hopkins v. Blanco,* 457 Pa. 90, 320 A.2d 139 (1973). What is not settled is when the two year statute of limitations started to run. Once that is decided, we must determine whether the record sufficiently demonstrates that appellants filed their action after the statute had run.

I

■ Although written in absolute terms—"the following actions and proceedings must be commenced within two years"—the period of the statute of limitations does not start to run until the tortious injury is discovered or reasonably discoverable by the plaintiff. *See, Ayers v. Morgan,* 397 Pa. 282, 154 A.2d 788 (1959); *Lewey v. Fricke Coke Co.,* 166 Pa. 536, 31 A. 261 (1895). This rule has been applied to cases involving subterranean rights, *see e.g., Smith v. Bell Telephone Co.,* 397 Pa. 134, 153 A.2d 477 (1959); *Lewey v. Fricke Coke Co., supra,* as well as internal bodily injuries, *see e.g., Ayers v. Morgan, supra, Acker v. Palena,* 260 Pa.Superior Ct. 214, 393 A.2d 1230 (1978); *Grubb v. Albert Einstein Medical Center,* 255 Pa.Superior Ct. 381, 387 A.2d 480 (1978); *Barshady v. Schlosser,* 226 Pa.Superior Ct. 260, 313 A.2d 296 (1973) (opinion in support of reversal).

In *Anthony v. Koppers Co.,* 284 Pa.Superior Ct. 81, 425 A.2d 428 (1980), *revers'd on other grounds,* 496 Pa. 119, 436 A.2d 181 (1981), we reviewed the application of the statute of limitations to cases in which the plaintiff has contracted a disease from a continuous exposure to a hazardous substance. We found that other jurisdictions have taken one of three approaches to these "creeping disease" cases:

A few jurisdictions have held that in a creeping disease case the statute starts to run with the plaintiff's "first breath" of the hazardous substance, even though he does not discover his disease or its cause until many years later. *See Schmidt v. Merchant's Dispatch Trans. Co.,* 270 N.Y. 287, 200 N.E. 824 (1936); *Cartledge v. Jopling,* [1962] 1 Q.B. 189 (C.A.), *aff'd,* [1963] Appeal Cases 758 (H.L.). The first breath rule, however, has led to such harsh results that it has been widely repudiated. *See Birnbaum, First Breath's Last Gasp: The Discovery Rule in Products Liability Cases,* 13 Forum 279 (1977) (criticizing *Schmidt*); Kelley, *The Discovery Rule for Personal Injury Statutes of Limitations: Reflections on the British Experience,* 24 Wayne L.Rev. 1641 (1978) (British reaction to first breath rule announced in *Cartledge*). Other jurisdictions have viewed subjecting the plaintiff to exposure as a continuing tort and have adopted what may be called the "last breath" rule, under which the statute of limitations starts to run at the last exposure, but neither has this rule proved satisfactory. *See Garrett v. Raytheon Co.,* Ala., 368 So.2d 516 (1979) (statute of limitation barred suit for injuries from exposure to radiation where last exposure occurred in 1957, even though symptoms were not manifest until 1975). *And see* Note, 31 Ala.L.Rev. 509 (1980) (criticizing *Garrett*). Accordingly, a majority of the jurisdictions that have considered the issue, including the Supreme Court of the United States, have held that the discovery rule applies to creeping disease cases. *See Urie v. Thompson,* 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949); *Karjala v. Johns-Manville Products Corp.,* 523 F.2d 155 (8th Cir. 1975); *Borel v. Fibreboard Paper Products Corp.,* 493 F.2d 1076 (5th Cir. 1973); *R. J. Reynolds Tobacco Co. v. Hudson,* 314 F.2d 776 (5th Cir. 1963); *Brush Beryllium Co. v. Meckley,* 284 F.2d 797 (6th Cir. 1960); *Ricciuti v. Voltarc Tubes, Inc.,* 277 F.2d 809 (2d Cir. 1960); *Strickland v. Johns-Manville International Corp.,* 461 F.Supp. 215 (S.D.Texas 1978); *Velasquez v. Fibreboard Paper Products Corp.,* 97 Cal.App.3d 881, 159 Cal.Rptr. 113 (App.1979); *Nolan v. Johns-Manville Asbestos & Magnesi-*

um, 74 Ill.App.3d 778, 30 Ill.Dec. 307, 392 N.E.2d 1352 (1979); *Miller v. Beech Aircraft Corp.,* 204 Kan. 184, 460 P.2d 535 (1969); *Louisville Trust Co. v. Johns-Manville Products Corp.,* 580 S.W.2d 497 (Ky.1979). *Harig v. Johns-Manville Products Corp.,* 284 Md. 70, 394 A.2d 299 (1978); *Schiele v. Hobart Corp.,* 284 Or. 483, 587 P.2d 1010 (1978). *And see* Birnbaum, *The Statute of Limitations in Environmental Suits: The Discovery Rule Approach,* Trial Volume 16, No. 4, at 34 (April 1980); Comment, *Asbestos Litigation: The Dust Has Yet To Settle,* 7 Fordham Urban L.J. 55, 77–83 (1980).

*Id.,* 284 Pa.Superior Ct. at 93, 425 A.2d at 434–35.

We further noted, *id.,* 284 Pa.Superior Ct. at 94, 425 A.2d at 435, that while our Supreme Court had indicated that it might apply a "last breath" analysis, *see Plazak v. Allegheny Steel Co.,* 324 Pa. 422, 188 A. 130 (1936), it had in fact subsequently applied the discovery rule. *See Caibattoni v. Birdsboro Steel Foundry & Machine Co.,* 386 Pa. 179, 125 A.2d 365 (1956).

Having determined that the "discovery rule" is applicable to creeping disease cases, we quoted with approval Judge TAKIFF's statement as to the level of knowledge a plaintiff must have before the statute of limitations starts to run. *Id.,* 284 Pa.Superior Ct. at 96, 425 A.2d at 436. Judge TAKIFF's statement was:

*Ayers'* progeny have struggled primarily with the question of the reasonableness of plaintiff's conduct in attaining the appropriate level of cognitive knowledge which ultimately prompts a timely lawsuit. With the question of "reasonableness" as a constant qualification running through the decisional law, the principle emerges that three independent phases of knowledge must be known or knowable to plaintiff before the limitations period commences: (1) knowledge of the *injury;* (2) knowledge of the *operative* cause of the injury; and (3) knowledge of the *causative relationship* between the injury and the operative conduct. In the typical personal injury case, knowledge of the foregoing elements is gained contempo-

raneously with the occurrence of the liability creating events and little difficulty is presented in applying the commencement of the statute of limitations period. When time and space intervene between the several levels of knowledge, however, courts have struggled with the application of the articulated legal standard to the facts involved. An analysis of the case law compels the conclusion that when a plaintiff knows or has reason to know of his injury, its operative cause, and the causative relationship to independent occurrences, he possesses as a matter of law, the necessary information to herald a possible tort and hence commence the running of the statutory period. *Volpe v. Johns-Manville Corp.,* 4 Phila. County Reporter 290, 295–96 (emphasis in original).

The present case was heard below by Judge TAKIFF, and applying the test that he had formulated, and that we later approved, he found that by June 1972 appellant-husband knew of his injury (asbestosis), its operative cause (inhalation of asbestos dust), and its causative relationship to asbestos products on the work site. Slip op. at 4. Since appellants did not file their action until January 1977, Judge TAKIFF held it barred.

Appellants argue that for an action to be barred it must also appear, in addition to the elements identified by Judge TAKIFF, that the plaintiff knew, or with reasonable diligence should have known, of "the culpability of [the] defendants," "the proper parties to sue," and "the identities of other potential defendants." Brief for Appellants at 16–17. Appellants maintain that the record is silent as to these elements, and that summary judgment was therefore inappropriately entered.

In *Anthony v. Koppers, supra,* we specifically rejected the argument that a plaintiff must know that he has a cause of action—that someone is legally culpable—before the statute of limitations starts to run. *Id.,* 284 Pa.Superior Ct. at 96, 425 A.2d at 436. We see no need to add to that discussion.

In support of their argument that the statute of limitations did not start to run until they knew "the proper parties to sue" and "the identities of other potential defendants," appellants cite *Grubb v. Albert Einstein Hospital,* 255 Pa.Superior Ct. 381, 387 A.2d 480 (1978). However, we do not find *Grubb* in point.

In *Grubb* the plaintiff became paralyzed following surgery to her back. Within two years of her operation, she sued the three physicians she thought responsible for her injury as well as the hospital where the operation was performed. During the deposition of one of the physicians, the plaintiff learned for the first time that the manufacturer of a surgical instrument used during the operation might also be responsible for her injury. This deposition occurred more than two years after her operation. The manufacturer was then joined as an additional defendant. We held that this joinder was not barred by the statute of limitations because "[w]e [found] no evidence . . . to indicate that [the plaintiff] was in a position . . . while still a paralyzed patient . . . to determine the causal relationship between her injuries and the [surgical instrument]." *Id.,* 255 Pa.Superior Ct. at 399, 387 A.2d at 489. This decision is consistent with the rule later announced by Judge TAKIFF in *Volpe v. Johns-Manville Corp., supra,* and approved by us in *Anthony v. Koppers Co., supra.* It is true that the plaintiff in *Grubb* did not learn of the identity of the manufacturer of the surgical instrument as a potential defendant until she took the physician's deposition, more than two years after her operation, but that was not what tolled the statute. What tolled the statute was that she did not know, and reasonably could not have known, that there was any causative relationship between a defective surgical instrument—of any manufacturer—and her injury.

We agree with Judge TAKIFF's analysis that "once [a plaintiff] possesses the salient facts concerning the occurrence of his injury and *who or what* caused it, he has the ability to investigate and pursue his claim." *Volpe v. Johns-Manville, supra* at 303. Here, it is enough that appellant-

husband knew that his asbestosis was caused by the inhalation of asbestos dust emanating from asbestos products on the work site. We find no reason to postpone the commencement of the statute until a plaintiff has in addition discovered who manufactured the products that he knows have injured him. Indeed, to do so would "nullify the justifiable rationale of the statute of limitations and permit the prosecution of stale claims." *Id.* at 324.

## II

Appellants next argue that even when the foregoing test to determine when the statute started to run is applied, the record does not warrant entry of summary judgment.

■ Summary judgment should be entered only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Pa.R.Civ.P. 1035. In deciding whether this is so, a court must view the evidence in the light most favorable to the non-moving party, and enter judgment only if the case is clear and free from doubt. *Ritmanich v. Jonnel Enterprises, Inc.,* 219 Pa.Superior Ct. 198, 280 A.2d 570 (1971).

■ Here, the complaint alleges that appellant-husband was employed at the Philadelphia Naval Shipyard "from 1957 until the present time," *i.e.,* the date of the complaint, and that he was required "[t]hroughout" that time to work with appellees' asbestos products. Complaint, para. 7.

The record also includes interrogatories and appellant-husband's answers, as follows:

Q.29. Set forth the names and addresses of all doctors or physicians who treated plaintiff in the last ten years setting forth the dates of said treatment, the nature of plaintiff's ailments or complaints and the nature of the treatment administered or prescribed by said doctor or doctors.

A.29. All of plaintiff's medical treatment has been supplied by Dr. Brignola identified above, with the exception of regular check-ups and the asbestosis frequent check ups. Plaintiff's only other medical problem was a hemorroidectomy which was performed in approximately the Spring of 1963 at St. Agnes Hospital.

Q.31. Set forth, to the best of your ability, the date when plaintiff first complained of any symptoms which you now believe to be related to the illness and describe the nature of his complaints.

A.31. Between 1968 and 1970, plaintiff started to experience increasing difficulty when being exposed to any fumes or dust. He would gag, become nauseous and sometimes actually throw up; he would have difficulty breathing, he would start to feel very nervous, very tense and also experience a build up of phlegm in the throat and in some manner also effects his speech in that he became hoarse.

Q.32. Set forth the name and address of the doctor or physician who first diagnosed plaintiff's illness as being asbestosis or mesothelioma and set forth the date when this diagnosis was made.

A.32. Dr. Brignola, 1972.

Q.33. Set forth the names and addresses of all physicians who treated plaintiff for asbestosis or mesothelioma or conditions related to that illness, setting forth the dates of all treatment and describe the nature of said treatment.

A.33. Dr. Brignola, regular check ups.

Q.37. Have you made a claim, in the nature of a Workmen's Compensation proceeding. If so, set forth the identity of the Workmen's Compensation carrier involved and if a claim has actually been filed with the Workmen's Compensation authorities, set forth the caption and numbers identifying said actions.

A.37. A claim was filed in 1972 and never fully processed. Plaintiff is experiencing sufficient difficulty with his ability to request and is considering reactivating this

claim for compensation and request that it be made permanent.

Finally, the lower court also had before it five exhibits. The first exhibit is a medical report by Dr. Brignola, dated June 3, 1972, concluding with the statement that "[t]he diaphragmatic pleural calcifications are indicative of asbestosis." R. 9–10a. The second exhibit is a letter of June 15, 1972, from Dr. Brignola to Dr. Lytle of the Industrial Medical Department of the Philadelphia Naval Shipyard, stating that appellant's X-rays revealed "bilateral diaphragmatic calcium deposits, pleural thickening and fibrosis especially of left 3–4 intercostal spaces and at the left base. The findings are indicative of asbestosis." R. 11a. The letter also stated that appellant "is to avoid further exposure to asbestosis [sic]." Id. The third exhibit is a form from the United States Department of Labor's Workplace Standards Administration. R. 12a. Appellees alleged in their motion for summary judgment that this form was a Federal Employees' Notice of Injury or Occupational Disease, dated June 16, 1972, and signed by appellant, and that it gave notice that appellant was claiming he suffered from asbestosis because of his occupational exposure to asbestos fibers. R. 5a–6a, paras. 18 & 19. Appellant denied this allegation "for the reason that copy furnished plaintiff is not legible" and "has obviously been written over." R. 22a, paras. 18 & 19. We find this response disingenuous. While the form is only partially legible, the lower court found, and we are satisfied, that appellant-husband "filed a Federal Employee's Notice of Injury or Occupational Disease claiming that he suffered from asbestosis from exposure to asbestos fibers." Slip op. at 2. The fourth exhibit is a letter dated December 4, 1972, from the United States Department of Labor's Office of Federal Employees' Compensation to the Commanding Officer of the Philadelphia Naval Shipyard. It states that "the occupational disease as claimed by subject, Carmen F. Staiano, ASBESTOSIS, has been accepted as job related." R. 13a (emphasis in original). Appellant's

name and address appear in the lower left hand portion of this letter. The last exhibit is a letter dated January 10, 1976, from appellant's counsel to Dr. Brignola. It states that counsel has been retained to represent appellant "for personal injuries suffered as a result of his exposure to asbestos while working at the Philadelphia Naval Shipyard," and that appellant "advises that he has been under your care and treatment for this affliction for approximately four years." R. 14a.

From these documents,—the complaint, appellant-husband's answers to interrogatories, and the several exhibits— it is clear that appellant-husband knew in 1972 that he had asbestosis and that its cause was his exposure to asbestos on the work site. The conclusion follows that the lower court's entry of summary judgment was supported by the record.

■ Appellants, however, resist this conclusion, arguing that the exhibits should not have been considered by the lower court because they were "unsworn exhibits." Brief for Appellant at 9. We find no merit in this argument. It is true that the only affidavit attached to appellees' motion for summary judgment was that of Thomas O. Malcolm, attorney for appellee Celotex, R. 15a, and that he was not in a position to attest to the accuracy of documents he neither produced nor witnessed. It is also true that the exhibits should have been sworn exhibits. *See Irrera v. SEPTA,* 231 Pa.Superior Ct. 508, 331 A.2d 705 (1974); *Toth v. Philadelphia,* 213 Pa.Superior Ct. 282, 247 A.2d 629 (1968). However, appellants did not object to the lower court considering the documents, and only now argue that the Malcolm affidavit was insufficient (even now appellants do not challenge the authenticity of the documents). Their argument is therefore waived. Pa.R.App.P. 301(a).

■ Appellants acknowledge the general rule that an issue not argued below may not be argued on appeal, but nevertheless assert that their argument is not waived. They say:

The provisions of Rule 1035(a) & (b), Pennsylvania Rules of Civil Procedure, are mandatory concerning what may and may not be considered on a motion for summary judgment. This being the case, the ordinary rule that an issue not raised below may not be argued on appeal is inapplicable in this case. If a document or other piece of evidence outside of those listed in Rule 1035(a) & (b) comes improperly before the court, that defect is never cured, and it never is properly of the record notwithstanding any prior failure to argue its inadmissibility.

Reply Brief for Appellants at 5.

Waiver, however, never "cures" a defect; it merely precludes an appellant from arguing an issue not argued below. The rule that an issue not argued below may not be argued on appeal is designed to promote the orderly and efficient use of judicial resources. If the lower court is given an opportunity to address an issue, it "is more likely to reach a satisfactory result, thus obviating the need for appellate review . . . ." *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 259, 322 A.2d 114, 117 (1974). Here, had appellants argued to the lower court that it should not consider unsworn exhibits, the court, we may assume, would have excluded the exhibits, *Irrera v. SEPTA, supra,* in which event appellees might have been able to cure the defect.

Finally, appellants argue that even when the exhibits are considered, they do not show that appellant-husband knew "the nature and extent of his individual affliction." Brief for Appellants at 10. In their view, "the answer to interrogatory no. 32 . . . states only when the first diagnosis of asbestosis was made; it does not state what, if anything, was communicated to [appellant-husband] at that time." *Id.* We find no merit in this argument either. It ignores the fact that following his examination by Dr. Brignola, appellant-husband filed a claim for compensation on the ground that he had asbestosis, and that on December 4, 1972, the Department of Labor notified him that his claim "has been accepted." Furthermore, appellees did not have to show that appellant-husband knew that he had asbestosis as a

result of his exposure to asbestos products on the work site, but only that he reasonably should have known. *See Ayers v. Morgan, supra; Grubb v. Albert Einstein Medical Center, supra.* The record demonstrates that appellant-husband attained that level of knowledge in 1972. The lower court was therefore correct in holding appellants' action barred.

## III

Appellants contend that even if the lower court properly dismissed the asbestosis claim, as we have held it did, two other claims remained unaffected, one, for the aggravating effects of inhaling asbestos dust two years before the filing of their complaint, and the other, for a "different disease of pleural thickening." Brief for Appellants at 17.

Appellants reason that because appellant-husband worked at the shipyard "at least through 1975 and possibly even later . . . the tortious acts alleged in the Complaint continued to within 2 years of the date on which appellant filed his law suit, and at the very least, those injuries which occurred within 2 years of the filing of the suit would not be time-barred." Brief for Appellants at 14.

There is some authority for this position. In *Daniels v. Beryllium Corporation,* 211 F.Supp. 452 (E.D.Pa.1962), the defendants contaminated the atmosphere in the vicinity of their manufacturing plant. Plaintiff-wife, who had lived in this vicinity for several years, contracted beryllium poisoning. Her illness was diagnosed in March 1953, but she did not bring suit until July 1, 1958. Applying Pennsylvania law, the Federal District Court concluded that a separate cause of action for aggravation of injuries would lie even though the action for the initial injury was barred by the statute of limitations. Said the court:

> We conclude, therefore, that all claims for damages attributable to exposure to beryllium dust which occurred more than two years prior to July 1, 1958, the date of commencement of this suit, are barred by the statute of

limitations. But the aggravation of the disease by additional poisoning since July 1, 1956, is an injury done to plaintiffs for which the suit was brought within the statutory two-year period. The statute therefore is not a bar, and plaintiffs may recover damages during that period and down to the date of trial. To hold otherwise would be to grant to the defendant a "prescriptive right to contaminate further" the wife plaintiff's lungs.

*Id.* at 456.

■ So far, no Pennsylvania appellate court has adopted, or rejected, the analysis in *Daniels v. Beryllium, supra.* We referred to the analysis in *Shadle v. Pearce,* 287 Pa.Superior Ct. 436, 430 A.2d 683 (1981), but declined to consider its validity because no aggravation since the statute had run was alleged. *Id.,* 287 Pa.Superior Ct. n. 3, 430 A.2d at 686, n. 3. That is also the case here. In their complaint, appellants allege the following:

26. As a direct and proximate result of the aforesaid plaintiff was caused to contract diseases and injuries to his body systems, lungs, respiratory system, heart, and other body parts including but not limited to asbestosis, scarred lungs, emphysema, pneumonoconiosis, and the risk of mesothelioma and other cancers, some or all of which may be permanent.

27. As a direct and proximate result of the aforesaid, plaintiff has undergone great physical pain and mental anguish and may continue to do so, he has sustained a loss of earnings and earning capacity and he may continue to do so, he has been obliged to spend various sums of money to treat his diseases and inj[u]ries and he may be obliged to continue to do so; his enjoyment of life has been impaired and his life expectancy shortened; all to his great loss.

Complaint, paras. 26 & 27.

Appellants have not alleged that appellant-husband's condition was aggravated by further exposure to asbestos during

the two years prior to his suit. Since appellants have not alleged a claim within *Daniels v. Beryllium, supra,* we are not called upon to decide whether such a claim would have been valid. Even if it would have been, since it was not alleged it was not dismissed by the lower court's entry of summary judgment.

■ Similarly, we do not read the complaint as alleging a claim for a "different disease of pleural thickening." But if we assume that the complaint should read as alleging such a claim, the claim is nevertheless barred, for a new limitation period does not start each time a new disease develops from the same tortious conduct of the defendant. Thus, in *Shadle v. Pearce, supra,* the plaintiff learned on February 20, 1973, that an operation by his dentist on an abscessed tooth might have caused bacterial endocarditis, which in turn led to his having an aortic valve transplant. Following his recovery, the plaintiff was able to lead a normal life. He therefore decided to forgo any claim that he might have against his dentist. Three years later, in January 1976, the plaintiff developed an aortic aneurysm, which was secondary to the valve transplant. The aneurysm drastically affected his life, for he was left incapacitated and with a shorter life expectancy. On December 20, 1977, he brought suit against his dentist. We held this action barred by the statute of limitations because the possible negligence of the dentist had been known to the plaintiff for more than two years, and the discovery or development of a new complication from the injury caused by that negligence did not start a new statute of limitations period. *Id.,* 287 Pa.Superior Ct. at 440, 430 A.2d at 685–86. Here, the record demonstrates that appellant-husband knew or at least reasonably should have known as early as 1972 that he had asbestosis. The fact that he later learned that his exposure to asbestos also resulted in "pleural thickening" did not begin a new statute of limitations period.

Affirmed.