486 A.2d 1335

**MEARS, INC., Appellant,**

v.

**NATIONAL BASIC SENSORS, INC.**

Superior Court of Pennsylvania.

Argued Sept. 6, 1984.

Filed Dec. 12, 1984.

Reargument Denied Feb. 14, 1985.

Petition for Allowance of Appeal Granted July 25, 1985.

286

Kevin J. Sommar, Landsdale, for appellant.

Robert L. Seigle, Southampton, for appellee.

Before CIRILLO, OLSZEWSKI and MONTGOMERY, JJ.

OLSZEWSKI, Judge:

In this case, appellant Mears, Inc., appeals the lower court's denial of its motion for a new trial after a verdict for appellee, National Basic Sensors, Inc. Mears argues

that the verdict was contrary to law and against the weight and sufficiency of the evidence and against the charge of the court, and that the trial judge erred in his charges to the jury. After studying the record, the lower court's opinion and the law, we reverse the lower court's order denying appellant's motion for a new trial.

The facts are these: Mears is an insurance agency handling, among others, policies written by American Policyholders Insurance Company. National Basic Sensors was insured, under a "standard multi-perils policy," for $100,000 by American Policyholders for a three-year period beginning September 1, 1977, with premiums payable yearly. National Basic paid the 1977–78 premium in December of 1977.

When the policy became effective in 1977, National Basic operated in leased quarters in Feasterville, Pennsylvania, In January, 1978, the company purchased a building in Churchville, Pennsylvania, and requested proof of insurance for mortgage purposes. Mears issued a binder showing proof of insurance for $160,000 for the new location, an increase of $60,000 over the prior coverage. The binder, which referred to the insurance policy already in existence for National Basic, expired on September 1, 1978. The only document received by National Basic showing the new location and coverage was this binder.[1]

In April, 1978, National Basic requested an increase in coverage, from $160,000 to $190,000. Mears assured National Basic that the company was covered, but issued no binder or endorsement to reflect the change. An officer of National Basic, Raymond McHugh, "repeatedly requested that Mears furnish to National Basic additional evidence that the new property was insured and requested the issuance of a formal policy." This Mears did not do. When National Basic received a bill from Mears on September 1, 1978, referring to the original premises in Feasterville as

1. American Policyholders sent completed change endorsements to National Basic on or about December 19, 1978, reflecting the changed location, the changed payees and the increased coverage.

the insured premises, officers of National Basic contacted American Policyholders directly and then cancelled the policy. Mears sent National Basic a bill for the increased and changed insurance coverage from January 5, 1978 to September 1, 1978, which National Basic refused to pay.[2] Mears brought suit, and the verdict was for National Basic.

First, we must note that appellant makes "boilerplate" allegations that the verdict was contrary to law, contrary to the charge of the court and against the weight and the sufficiency of evidence.

These allegations are most general. In *Carnicelli v. Bartram*, 289 Pa.Super. 424, 433 A.2d 878 (1981), this Court held that where a new trial had been granted on the basis of a motion arguing that the verdict was contrary to law and contrary to the evidence, the trial court had abused its discretion. The Court held that such general assignments of error did not state grounds for relief, and that the trial court should have ignored them in favor of specific assignments.

The rationale behind this policy is to give the court notice as to which mistakes were supposedly committed. If the arguments are unclear, the court is adrift in a trackless sea of potential error when reviewing the case. The policy is much like that of barring appellate courts from reviewing questions not preserved below; had the arguments been made, the lower court might have decided the issue in the party's favor, thus obviating the need for judicial review. *See Staiano v. Johns-Manville Corp.*, 304 Pa.Super. 280, 450 A.2d 681 (1982). When the assignments are general, the court does not know what specific complaints exist in the mind of counsel, and cannot be expected to divine them. To so require the courts would not serve the goal of orderly and efficient use of judicial resources.

2. The record indicates that Mears charged National Basic for added coverage and changed location from January 5, 1978, to September 1, 1978, and for $30,000 in increased coverage from April 26, 1978, to September 1, 1978, until November 28, 1978. The total charges were $4,936.

■ We hold that the policy enunciated in *Carnicelli* applies here and precludes us from considering appellant's assignments that "the verdict was contrary to law, contrary to the evidence and the charge of the court, and against the weight of the evidence." Accordingly, we will not look into these claims.

Appellant did make other, specific, assignments of error in its motion to the court below, and these we will examine. First is the argument that the court erred by failing to read to the jury certain points of charge.[3]

■ The standard for whether a new trial is properly denied is whether the trial court's order represents a palpable abuse of discretion or is based on an error of law. *Bumbarger v. Kaminsky,* 311 Pa.Super. 177, 457 A.2d 552 (1983). Here, the argument is that the court below made an error of law in charging the jury as it did. The jury was charged that a policy or endorsement must be delivered within a reasonable time after agreement or the insured is not liable for premiums. The court refused to charge the jury that National Basic had been covered by American Policyholders for the time of the binder and for the time when no binder or endorsement existed. We must examine pertinent contract law to determine whether an error was made.

■ In interpreting a contract, we must first examine its language; and if the contract's language is clear and unequivocal, its meaning must be determined by its contents alone. *Steuart v. McChesney,* 498 Pa. 45, 444 A.2d 659

---

**3.** The points are lengthy, but in essence state that:

—When an agent promises that an insured is covered, the law will impose liability upon the agent for the obligation.

—Mears, by giving assurances of coverage, was acting within the scope of its agency and National Basic had the protection requested of Mears.

—If insurance is provided, the insured must pay premiums.

—The issuance of an endorsement after cancellation does not affect whether coverage existed prior to the endorsements; coverage existed for the disputed period.

(1982). In the instant case, the contract of insurance, states:

> Added Provisions. The extent of the application of insurance under this policy and of the contribution to be made by this Company in case of loss, and any other provision or agreement not inconsistent with the provisions of this policy, may be provided for in writing added hereto, but no provision may be waived except such as by the terms of this policy is subject to change.

We hold that the binder issued by Mears for the period January 5, 1978, to September 1, 1978, is sufficient to satisfy the contract's requirements of changes in writing. The binder, by its terms, refers to the main contract of insurance, and is made a part of it.[4]

The trial court thus erred by instructing the jury that the actual issuance of a formal policy was required before National Basic could be required to pay any premiums. By the terms of the contract, American Policyholders was liable for claims made by National Basic between January 5, 1978, and September 1, 1978, and National Basic was liable for premiums on that policy.

Whether premiums are due for the additional $30,000 in coverage which is not evidenced by a writing must be decided by different means. By the terms of the policy,

---

4. Appellee argues that by statute, no binder is effective for more than 30 days. 40 P.S. § 636(5)(d) provides:

> (d) Binders or other contracts for temporary insurance, including fire insurance, may be made orally or in writing, for a period not to exceed thirty days, and shall be deemed to include all the provisions of subsection two of this section and all such applicable endorsements approved by the Insurance Commissioner as may be designated in such contract of temporary insurance, except that the cancellation clause and the date thereof specifying the hour of the day at which the insurance shall commence may be provided by the express terms of such contract of temporary insurance.

Appellee offers no cases to show that this statute was designed to automatically invalidate all contracts for temporary insurance 30 days after they are executed. We think the purpose of the statute is to protect consumers of insurance, not subject them to uncertainty. We do not think that it made the binder in the instant case invalid after 30 days.

American Policyholders was liable only for claims covered in writing in the policy, and thus it would seem that American Policyholders was not liable for claims in excess of $160,000 on the policy. If American Policyholders was not liable, then National Basic is not liable for the premiums, since it had no coverage.

Appellant argues vigorously that because, under caselaw, American Policyholders and Mears would have been required to pay claims by National Basic had it incurred a loss, even though there was no binder or endorsement in existence, National Basic had insurance and should be required to pay for it.[5] We disagree.

The trial court stated that National Basic had bargained for tangible evidence of an insurance policy when it negotiated the changes leading to the case at bar. We agree, but with an added observation: National Basic had bargained for regular insurance coverage. What it received was flawed coverage—coverage fraught with potential for suit.

We cannot say that every policy that is facially valid leads to automatic recovery once the insured files a claim with the insurer. The great number of cases on insurance coverage would make such a claim laughable. We can say, however, that where a claim is made doubtful, either through uncertainties in coverage or peculiar events leading to the claim, litigation is much more likely to result.

National Basic bargained for regular insurance coverage, not coverage which came with free litigation potential. The trial court was correct in charging the jury that in the absence of a reasonable excuse, Mears was required to give National Basic some tangible proof of insurance before Mears could recover this part of the premium.

■ Finally, appellant argues that the trial court erred by failing to tell the jury that premiums were due Mears for the period September 1 through November 29, 1978, the time during which National Basic was attempting to discover what coverage it had. By our reasoning in the earlier

---

5. Appellant makes this argument via its contention that the trial court failed to charge the jury so.

part of this opinion, since National Basic was covered by the original policy issued by Mears for $100,000 at the old location for this time, the binder having expired by its own terms, National Basic is liable for premiums due under the old policy for the old location. The trial court erred by failing to so inform the jury.

Because the court below based its order on an error of law, the order denying a new trial is reversed.

MONTGOMERY, J., filed a dissenting statement.

MONTGOMERY, Judge, dissenting:

I respectfully dissent. I believe the charge of the lower court, considered as a whole, does not provide a basis for the Appellant to be awarded a new trial on any ground. The majority finds that the lower court should have directed the jury to make a particular finding that premiums were due during a time period during which I believe the evidence established grounds for a reasonable difference of opinion. Thus, I believe that a jury question existed on the issue, and that the evidence justified the jury's conclusion that the Defendant-Appellee should not have been held liable for premiums. I would affirm the lower court's denial of Appellant's request for a new trial.