507 A.2d 32

**MEARS, INC., Appellee,**

v.

**NATIONAL BASIC SENSORS, INC., Appellant.**

Supreme Court of Pennsylvania.

Argued Dec. 5, 1985.

Decided March 21, 1986.

62

Robert Lewis Seigle, Bucks Co., for appellant.

George W. Tracy, Kevin J. Sommar, Montgomery Co., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

FLAHERTY, Justice.

The question in this case is whether a person who has contracted for increased and changed insurance coverage is entitled to reasonable assurance of the exact terms of the coverage, and if so, whether such assurance was provided in this case.

National Basic Sensors, Inc. (hereinafter "National") is a manufacturer of devices which measure high temperatures. In 1977, National was operating out of leased premises in Feasterville, Pennsylvania. Mears, Inc. is an independent insurance agency, representing, among others, American

Policyholders Insurance Co., and is located in Cinnaminson, New Jersey.

In September of 1977, National purchased from Mears a multi-peril insurance policy underwritten by American Policyholders Insurance Co. covering the contents of its leased building and liability for injury to visitors. National received a three-year policy reflecting this coverage, and paid the first year's premium for coverage under this policy.

In January of 1978, National purchased a building in Churchville, Pennsylvania. Because National was moving from rented quarters to its own building, National asked Mears to add fire coverage to the existing policy. Mears inspected the building and suggested fire coverage in the amount of $160,000. National agreed, and in order to facilitate the closing, Mears provided a binder of temporary insurance, dated January 4, 1978, to National.[1]

1. This is a facsimile of the temporary insurance binder which was provided on January 4, 1978:

# INSURANCE BINDER

THIS BINDER IS A TEMPORARY INSURANCE CONTRACT, SUBJECT
TO THE CONDITIONS SHOWN ON THE REVERSE SIDE OF THIS FORM.

acord

Binder No.

**NAME AND ADDRESS OF AGENCY**
Mears, Inc.
1630 Riverton Rd.
PO Box C-7
Cinnaminson, N.J. 08077

**COMPANY**
American Policyholders Ins. Co.
Effective 12:01Am    January 5, 1978
Expires    12:01 am    September 1, 1978
☒ This binder is issued to extend coverage in the above named
company per expiring policy # (SMPX115129047

**NAME AND MAILING ADDRESS OF INSURED**
National Basic Sensors, Inc.
1519 Bristol Road
Churchville, Pa. 18966

**Description of Operation/Vehicles/Property**

**PROPERTY**

| Type and Location of Property | Coverage/Perils/Forms | Amt of Insurance | Ded. | Coins % |
|---|---|---|---|---|
| Masonary Building 1519 Bristol Road Churchville, Pa. 18966 | Fire, EC, VMM | 160,000 | | 80 |

**LIABILITY**

| Type of Insurance | Coverage/Forms | | Limits of Liability | |
|---|---|---|---|---|
| | | | Each Occurrence | Aggregate |
| ☐ Scheduled Form   ☐ Comprehensive Form | | Bodily Injury | $ | $ |
| ☐ Premises/Operations | | Property Damage | $ | $ |
| ☐ Products/Completed Operations | | | | |
| ☐ Contractual | | Bodily Injury & Property Damage Combined | $ | $ |
| ☐ Other (spec.fy below) | | | | |
| ☐ Med. Pay. $  Per Person  $  Per Accident | | | | |
| ☐ Personal Injury | ☐ A  ☐ B  ☐ C | Personal Injury | $ | |

**AUTO**

| Type of Insurance | | | Limits of Liability |
|---|---|---|---|
| ☐ Liability  ☐ Non-owned  ☐ Hired | | Bodily Injury (Each Person) | $ |
| ☐ Comprehensive-Deductible $ | | Bodily Injury (Each Occurrence) | $ |
| ☐ Collision-Deductible $ | | | |
| ☐ Medical Payments $ | | Property Damage | $ |
| ☐ Uninsured Motorist $ | | | |
| ☐ No Fault (specify): | | Bodily Injury & Property Damage Combined | $ |
| ☐ Other (specify): | | | |

☐ WORKERS' COMPENSATION — Statutory Limits (specify states below)    ☐ EMPLOYERS' LIABILITY — Limit $

**SPECIAL CONDITIONS/OTHER COVERAGES**

**NAME AND ADDRESS OF ☒ MORTGAGEE    ☐ LOSS PAYEE    ☐ ADD'L INSURED**
Fidelity Bank
Broad and Walnut Sts.
Philadelphia, Pa.

LOAN NUMBER

Signature of Authorized Representative    MEARS, INC.

Date 1/4/78

ACORD 75 (8-77)

The reverse side of the temporary binder contains the following language:

## CONDITIONS

This Company binds the kind(s) of insurance stipulated on the reverse side. This insurance is subject to the terms, conditions and limitations of the policy(ies) in current use by the Company. This binder may be cancelled by the Insured by surrender of this binder or by written notice to the Company stating when cancellation will be effective. This binder may be cancelled by the Company by notice to the Insured in accordance with the policy conditions. This binder is cancelled when replaced by a policy. If this binder is not replaced by a policy, the Company is entitled to charge

In April of 1978, four months after moving to its new location, National requested that Mears increase the coverage on its building to $190,000 from $160,000. Mears agreed to do this, but he did not issue a temporary binder or any other document indicating that the changed and increased coverage was bound. As stated by Superior Court, the President of National "repeatedly requested that Mears furnish to National Basic additional evidence that the new property was insured and requested the issuance of a formal policy," but apart from verbal assurances that coverage was bound, Mears never furnished any written explanation of the exact terms of the increased coverage which he asserts was bound.

On September 1, 1978, National received a bill from Mears for increased and changed insurance coverage from January 5, 1978 (the date of moving to the new location) to September 1, 1978 (the one-year anniversary of the three-year original policy). The bill listed the insured premises as Feasterville, National's former location. On November 29, 1978, National cancelled the policy with American Policyholders and refused to pay the amount billed for increased and changed coverages. Neither a policy reflecting changed and increased coverage nor any endorsements for changed and increased coverage were issued until after National had already cancelled the insurance.[2]

Mears then brought suit for the unpaid premiums for changed and increased coverage. A jury, sitting in the Court of Common Pleas of Bucks County, returned a verdict for National. The Court's instruction to the jury, in pertinent part, was that the insurance company had an obligation to issue ultimate insurance documents within a reasonable time, and that if the documents were not issued and the insured cancelled because of an unreasonable delay,

a premium for the binder according to the Rules and Rates in use by the Company.

2. National also held a Workmen's Compensation policy through Mears from American Policyholders, but that policy is not relevant to this dispute.

the insured was not liable for premiums. Mears then appealed to Superior Court, 337 Pa.Super. 284, 486 A.2d 1335 (1984), which ordered a new trial on the grounds that the trial court's instruction was an error of law.

Mears' arguments to Superior Court were: (1) that the trial court erred in its instruction to the jury that ultimate insurance documents must be delivered within a reasonable time after agreement or the insured is not liable for premiums; (2) that since there was an oral agreement to bind increased coverage from $160,000 to $190,000, the insurance company would have been required to pay claims by National had it incurred a loss, even though there was no binder or endorsement in existence, and National should, therefore, be required to pay for this coverage; and (3) that National was liable for premiums due from September 1, 1978 through November 29, 1978, the period between the last date billed for and the cancellation of the coverage.

Superior Court agreed with Mears' first claim that no policy or endorsement was required to be delivered. The court reasoned that since there was a temporary binder which, by its terms, bound coverage from January 5, 1978 to September 1, 1978, (See n. 1, supra), National was liable for the premium for this coverage.

Superior Court disagreed with the second contention, however, that premiums must be paid if increased coverage was bound solely by oral agreement. It held that even if increased coverage from $160,000 to $190,000 had been bound by oral agreement, since no writing confirming this agreement was issued, National was not liable for the premium on this increased coverage. National had bargained for "regular insurance coverage, not coverage which came with free litigation potential." In other words, according to Superior Court, even if the insurance company would have been obligated to pay a loss up to $190,000 on its oral contract for insurance, National was not obligated, for that reason, to pay premiums, since it bargained for, but did not receive, reasonable certainty of coverage as well as the coverage itself.

As to the third claim, that National was liable for a premium from the last date billed until the policy was cancelled, Superior Court held that National was liable for coverage from September 1 (the date of the bill), through November 29, 1978 (the date of cancellation) apparently on the theory that National was covered under the original three-year policy issued for the original location.

In sum, Superior Court held that because the insured possessed a policy for the original coverage and one of two binders for changed coverage, the insured was liable for premiums on this insurance, regardless of whether the documents were current or whether they spelled out the exact terms of the coverage. Because the trial court did not follow this analysis, but instructed the jury, in essence, that National was not liable for premiums if there had been an unreasonable delay in furnishing insurance documents which reflected the terms of the coverage, Superior Court ordered a new trial.

National petitioned for allowance of appeal from the order of Superior Court and we granted allocatur. The controlling issues raised on this appeal are whether it was error for the trial court to have instructed the jury that the issuance of ultimate insurance documents within a reasonable time was a condition precedent to the insured's duty to pay premiums; and whether National was liable for premiums on the original three year policy from September 1, 1978 to November 29, 1978, the date of cancellation. For the reasons that follow, we reverse.[3]

As to the changed and increased coverage, Mears argues that National was covered by oral contracts for insurance which either modified existing coverage or formed new coverage, and that National, therefore, is liable for premiums for the changed and increased coverage. We acknowledge that oral contracts for insurance are permitted in

3. We arrive at this statement of the controlling issues in the case with very little assistance from counsel for National. In fact, instead of being an aid, the brief submitted by counsel for National is so carelessly written that it obscures rather than explains National's position.

Pennsylvania. *Rossi v. Firemen's Insurance Company,*
310 Pa. 242, 165 A. 16 (1932). We also note that in the
absence of an insurance policy, "ambiguity in the written
words [here, in documents other than the policy] will be
construed liberally in favor of the insured against the
insurer. ..." *Collister v. Nationwide Life Insurance
Company,* 479 Pa. 579, 593, 388 A.2d 1346 (1978).

Notwithstanding Mears' argument that there were valid
oral contracts of insurance in this case, *we need not ad-
dress the question of whether there was actual coverage,*
for the controlling question *is not whether there was cover-
age,* but whether, assuming coverage to exist, *the insured
was also entitled to reasonable assurances that he was
insured against explicit, particular perils.* In this analy-
sis, we look *forward* from the time promises were ex-
changed rather than *backward* from the end of the appel-
late process.

■ Whether the insured is entitled to such assurances, in
turn, will depend on what was bargained for when National
asked Mears to procure changed and increased insurance
coverage for its business.

It is, of course, the goal of every purchaser of insurance
to secure definite coverage of the type sought. The insured
does not, as the saying goes, seek to purchase a lawsuit.
Rather, he wants reasonable assurance that his interests, as
he has explained them to the insurance agent, are protected.
What counts as an assurance of coverage will depend on
when the assurance is sought and the nature of any assur-
ance that is actually given. Assurance of coverage will
presumably take a different form on the second day after
coverage is agreed upon than after the second month.

In sum, a typical purchaser of insurance bargains for at
least *two* things: the coverage *itself* and *assurance* that
explicit, particular coverage has been effected. For this
reason, we hold that in a contract to purchase insurance,
there is a constructive condition that assurances of explicit,
particular coverage will be supplied to the insured within a

reasonable time and that failure to provide these assurances constitutes a substantial breach of the original agreement.

■ In the present case, except for a temporary binder, no explicit, particular assurances of changed and increased coverage were delivered to National during the period of coverage. The temporary binder, issued on January 4, 1978, indicates the general type of insurance that was bound, and the amounts, but it does not provide for the exact terms of the coverage.

For a number of reasons, this binder is less than satisfactory assurance of explicit, particular coverage. For one thing, Section 506(d) of the Insurance Company Law, 40 P.S. § 636(d) provides that contracts for temporary insurance "may be made orally or in writing, for a period which shall not exceed thirty days...." We do not address the question of whether this statute invalidates temporary binders which are more than thirty days old, but we do note that the statute raises an obvious question, not an assurance, as to coverage.[4]

Secondly, the binder, by its terms refers to an "expiring" policy, which implies that another policy, not the one already delivered, will control the additional and increased coverages. Since a second policy was not delivered, that too raises a question, not an assurance as to coverage.

And finally, as noted earlier, a binder does not set out the exact terms of coverage. But as we have indicated, timely assurances of explicit, particular coverage, as well as actual coverage are bargained for in the usual contract to purchase insurance. Here, since only a binder indicating general coverage, not explicit, particular coverage was issued, that too raised questions, not assurances as to coverage. Thus, there is substantial evidence of record in support of the jury's apparent conclusion that no legally adequate assurances of changed and increased coverage were provided prior to cancellation.

**4.** Insofar as Superior Court may be said to have construed this statute, it committed error.

■ Absent other considerations, a court could conclude on these facts that, as a matter of law, National was discharged from any obligation under the contract for changed and increased coverage.[5] However, there were other considerations in the case. Mears claimed that the reason for the delay in providing documentation was that it was necessary to inspect and rate National's new location in order to determine appropriate coverages and premiums. In effect, Mears raised the question of the reasonableness of the delay in issuing insurance documents. In the face of this claim, it was appropriate for the trial court to submit the question of the reasonableness of the delay to the jury.

■ Mears asserts, however, that the trial court erred in failing to charge the jury as Mears requested.[6] The court's instruction to the jury, in pertinent part was:

[T]here is an obligation to issue all of the ultimate documents within some reasonable period of time thereafter

5. We have already noted that failure to provide timely assurances of explicit, particular insurance coverage normally will be treated as a substantial breach of the insurance contract. According to Corbin, when a contract cannot be substantially performed, either because it is too late or because, for any other reason, the defects cannot be cured, the promisee is discharged from any contractual duty:

If it is now too late for [substantial] performance, or if for any other reason the defects can not be cured, the defendant is not only privileged not to perform his part of the exchange now, he is so privileged forever and he is discharged from his contractual duty. Corbin, *On Contracts* (One Vol. Ed.1952) § 700, p. 653. Thus, on the facts of this case, absent a claim that failure to provide these documents was reasonable in the circumstances, the insured would be discharged from liability for premiums.

6. Mears' requested points for charge are properly summarized by Superior Court as follows:
1. When an agent promises that an insured is covered, the law will impose liability upon the agent for the obligation.
2. Mears, by giving assurances of coverage, was acting within the scope of its agency and National Basic had the protection requested of Mears.
3. If insurance is provided, the insured must pay premiums.
4. The issuance of an endorsement after cancellation does not affect whether coverage existed prior to the endorsements; coverage existed for the disputed period.
In view of our disposition of this case, the trial court acted well within its discretion in denying these points for charge.

[after the issuance of a binder]. If there's an unreasonable delay in the issuance of the actual policy, and if the insured, before the policy is issued, terminates his coverage because of that delay, the insured would not be liable for the premiums which had accrued or were incurred during the binder period. Therefore, the issue here in this case for you is going to be to determine whether or not there was an unreasonable delay by either the insurance company or by Mears as agent in getting the final documents out to the insured.

The question of the reasonableness of delay was properly submitted to the jury, and, as we have discussed earlier, the charge was substantially accurate. We conclude, therefore, that Superior Court was in error in holding that the temporary binder issued on January 4, 1978 (n. 1, supra) obviated Mears' duty to provide assurances of explicit, particular coverage in a timely fashion.

■ As to the question of National's liability for premiums from September 1, 1978 through November 29, 1978, we note, as did the trial court, that the binder which was issued when National moved into its new building in January of 1978 (See n. 1, supra) referred to National's "expiring" policy:

COMPANY: American Policyholders Ins. Co.

EFFECTIVE: 12:01 AM January 5, 1978

EXPIRES: 12:01 AM September 1, 1978

This binder is issued to extend coverage in the above named company [American Policyholders] per expiring policy # SMPX115124047

(Emphasis added.) The testimony of National's Chief Executive Officer and this language in the binder indicate that the parties contemplated that a new policy would be issued covering the time period which began when National moved into its new quarters. However, neither a formal policy nor any endorsements of coverage were issued prior to National's cancellation. Under these circumstances, National is not liable for premiums from September 1, 1978 until No-

vember 29, 1978. As we indicated earlier in this Opinion, in the usual insurance contract timely assurance of explicit, particular coverage is bargained for. When no such assurances were issued from January 1978 until after the date of cancellation in November of 1978, the insurance company substantially breached its obligation to furnish an explicit, particular assurance of coverage and the insured is, therefore, not liable for the premium at issue.

It can hardly escape notice that not only were National's expectations of documentation of the terms of coverage commercially reasonable, but also that the remedy for the problem raised by this case lay solely with the insurance company and its agent. National did all it could do in requesting documentary assurances of explicit coverage. Instead of getting what it asked for, however, National was given only verbal assurances that it was covered. But all verbal assurances are made subject to lapses of memory, which may be particularly troublesome once the building has burned down and a claim is asserted. Even if the general assurances are admitted, however, there may be legitimate disagreement about details. And even if the disagreements are resolved in favor of the insured, the resolution may come only after protracted litigation. No insured bargains for that.

Had American Policyholders issued explicit insurance documents within a reasonable period of time prior to cancellation this case would not have arisen. This they did not do, and when insurance companies, prior to cancellation, do not provide this substantial part of the service bargained for, they may not collect a premium.

Order of Superior Court is reversed. Judgment of the Court of Common Pleas of Bucks County is reinstated.

NIX, C.J., and PAPADAKOS, J., concur in the result.

ZAPPALA, J., filed a dissenting opinion in which McDERMOTT, J., joined.

74

ZAPPALA, Justice, dissenting.

I dissent.

There is no question in my mind that the purchaser of insurance bargains for coverage not assurances. An insurance contract arises from the mutual promises of the parties. The insured bargains for coverage and in return pays a premium, while the insurance company bargains for a premium and in return provides coverage. The legal documentation becomes evidence of the acceptance of the mutual promises, not the consideration for the insurance contract. Therefore, a failure to furnish assurances cannot be deemed a substantial or material breach mandating avoidance of a contractual obligation.

Since the lower court instructed the jury that failure to issue the insurance documents within a reasonable time absolved the Appellant of any liability, I agree with the Superior Court's Order reversing the trial court and granting the Appellee a new trial.

McDERMOTT, J., joins in this dissenting opinion.