# Jenkins v. Martin Law Offices, LLP

*Scott M. Rothman*, for plaintiff.
*Aaron D. Martin*, for defendant.

TUNNELL, *J.*, August 26, 2013—

## FINDINGS OF FACT

1. Plaintiff David Jenkins was employed as an associate of the firm of Martin Law Offices, LLP ("Martin") pursuant a written offer dated January 17, 2006.

2. The offer letter was drafted by defendant Martin.

3. Although a subsequent formal written employment agreement was envisioned, none was ever created.

4. Under the agreement, Jenkins was to be paid a salary of $1,200 per week.

5. The agreement specified that his employment was "at will".

6. The agreement further specified that "You will be required to bill a minimum of thirty (30) hours of client work per week."

7. In fact, in the two years that Jenkins worked for Martin, he never hit his minimum billing of 30 hours a week of client work.

8. Jenkins did all the client work given to him by Martin.

9. Jenkins maintained detailed billing records for both client work and firm (i.e. non-billable) work which he regularly turned over to Mr. Aaron Martin.

10. Mr. Aaron Martin used those records in order to

generate bills to clients for Mr. Jenkins' time.

11. On those occasions when he would write Mr. Jenkins' time down and not bill it, he ordinarily gave Jenkins full credit for that time.

12. Martin never disciplined or reprimanded Jenkins for poor performance, nor for underbilling.

13. For the initial weeks of Jenkins' employment, he was paid $1, 200 even though no hours had yet been billed.

14. Well into Jenkins' employment, for the period of February 19, 2007 to March 2, 2007, Jenkins' billing report (Exhibit D-1), when analyzed, demonstrates that he billed some 7.8 hours of client work over two weeks.

15. The payroll records produced by Martin (Exhibit P-4) for the same time period report that Jenkins' gross earnings were $2,400 for that same two-week time period.

16. When Jenkins was not fully paid his weekly salary, the actual reason was Martin's cash flow problems.

17. The court does not credit the defendant's testimony that the decreased sums paid to Jenkins were the result of an intentional adjustment to his salary by reason of his under-billing.

## DISCUSSION

The parties do not dispute that their contractual relationship is governed by a letter dated January 17, 2006 that was sent to Mr. Jenkins. They disagree about the effect of the first two paragraphs, and further whether the same were subsequently modified. The salient parts of those two paragraphs are as follows:

This letter will confirm that Martin Law Offices, LLP ("the Firm") has extended an offer to employ you as an associate of the Firm at the gross rate of compensation of one thousand two hundred dollars ($1,200) per week subject to provisions to be memorialized in a subsequent formal, written employment agreement. Such agreement shall include, without limitation, the exertion of your exclusive and best efforts for the Firm and non-competition for the duration of your employment with the Firm.

You will be required to bill a minimum of thirty (30) hours of client work per week.

There was no subsequent formal contract.

Mr. Jenkins had no hourly work of his own. He testified that he performed all of the client work that the defendant requested he perform, that he was never disciplined or reprimanded for poor performance or substandard work, and that he kept track of his billable and non-billable time, which he turned over to Mr. Martin. He argues that their agreement did not expressly condition his right to receive his salary on any minimum billing requirement.

Mr. Aaron Martin testified that under the parties' agreement plaintiff was required to bill a minimum of 30 hours per week in order to be paid his salary of $1,200 per week. He testified that Mr. Jenkins substantially underperformed by not billing anything close to 30 hours a week of client work. For that reason, the defendant says it did not compensate the plaintiff at the rate agreed upon. Mr. Aaron Martin testified that Mr. Jenkins acquiesced without protest. This conduct, Martin contends, shows that the parties modified the terms of the written agreement.

Questions that arose in the court's mind during trial included whether, if Mr. Jenkins billed more than 30 hours a week would he be entitled to additional compensation, unanswered by the contract, and whether there really was any relationship at all between salary and billing. It would seem illogical if Mr. Jenkins could bill zero hours for two months and expect to be paid his weekly salary of $1,200 but, again, the contract itself is indefinite on this. On the other hand, the relationship was at will. Ultimately, as several telltale pieces of parol evidence came in, the court concluded it could resolve the ambiguity.

Contemporary contract law generally provides that a contract is enforceable when the parties reach a mutual agreement, exchange consideration and have outlined the terms of their bargain with sufficient clarity. *Com. Dept. of Transportation v. First Pennsylvania Bank*, 77 Pa. Cmwlth. 551, 466 A.2d 753 (1983). An agreement is sufficiently definite if the parties intended to make a contract and there is a reasonably certain basis upon which a court can provide an appropriate remedy. *Linnet v. Hitchcock*, 324 Pa. Super. 209, 214, 471 A.2d 537, 540 (1984). The paramount goal of contractual interpretation is to ascertain and give effect to the intent of the parties. *Burns Mfg. Co., Inc. v. Boehm*, 467 Pa. 307, 313, 356 A.2d 763, 766 (1976). Where the language of a written contract is clear and unequivocal, its meaning must be determined by its contents alone. *Mears, Inc. v. National Basic Sensors*, 337 Pa. Super. 284, 289, 486 A.2d 1335, 1338 (1984). If there is some ambiguity in the contract, a court may examine the surrounding circumstances to ascertain the intent of the parties. *Kennedy v. Erkman*, 389 Pa. 651, 655, 133 A.2d 550, 552 (1957). Furthermore, if it is asserted that part

of a contract is oral, the court may also in that situation examine the surrounding circumstances to determine the parties' intent. *Westingthouse Electric Co. v. Murphy, Inc.*, 425 Pa. 166, 171-72, 228 A.2d 656, 659 (1967). Courts wish to effectuate the parties' intentions, and for that reason they may enforce an indefinite contract if its terms become definite as the result of partial performance; one or both parties may perform in such way as to make definite that which was previously unclear. *Murray On Contracts*, Section 51-52 (1974).

The course of the parties' performance under a contract is always relevant in interpreting that contract. *Atlantic Richfield Co. v. Razumic*, 480 Pa. 366, 390 A.2d 736, 741, n. 6 (1978). The "course of performance" is a sequence of conduct between the parties after forming the contract and during performance of the terms of the contract which may be used only to interpret that contract. *Matthews v. Unisource Worldwide, Inc.*, 748 A.2d 219 (Pa. Super. 2000), *app. den.* 568 Pa. 664, 795 A.2d 977 (2000). Where, as here, an ambiguity exists in the contract, parol evidence is admissible to explain, clarify or resolve the ambiguity, irrespective of whether the ambiguity is created by the language of the agreement or by extrinsic or collateral circumstances, *In Re: Estate of Herr*, 400 Pa. 90, 161 A.2d 32 (1960). Under the rule of *contra proferentem*, any ambiguous language in a contract is construed against the drafter and in favor of the other party if the latter's interpretation is reasonable. *Sun Co., Inc. v. Pennsylvania Turnpike Commission*, 708 A.2d 875 (Pa. Cmwlth. 1998).

Martin's available payroll records were spotty but the court looked at what there was *ante litem motam*. First of all, Jenkins was paid $1,200 per week for the initial weeks

of his employment even though no hours had been billed. A full year later, Jenkins' own billing records for the period February 19, 2007 to March 2, 2007 demonstrate that he billed a total of 7.8 hours of client work for those two weeks. Martin's payroll records for the same period of time report Jenkins' gross earnings as $2,400 for that same two-week period. This evidence turns the case in Jenkins' favor.

## CONCLUSIONS OF LAW

1. No formal written employment agreement having been created, the terms and conditions of the parties' undertakings remained as set forth in the offer letter of January 17, 2006.

2. The parties' agreement did not expressly condition Jenkins' right to receive his salary on the minimum billing requirement.

3. Defendant Martin never altered Jenkins' salary.

4. The contract was never modified by the parties.

5. As demonstrated by the 2007 payroll records, Jenkins was entitled to his weekly salary even if he did not hit his minimum under the parties' agreement.

6. Due to the operation of the statute of limitations for contracts, plaintiff is barred from receiving any salary payments prior to August 12, 2007.

7. Any claim under the Pennsylvania Wage Payment and Collection Law, 43 P.S. §260.6, is likewise barred by operation of the three-year statute of limitations.

8. Defendant materially breached the parties' agreement.

9. As a result of defendant's breach, plaintiff is entitled to his weekly salary of $1,200 from August 12, 2007 to February 28, 2008 in the amount of $35,760, plus pre-judgment interest at the legal rate from August 12, 2007.

## ORDER

And now, this 26th day of August, 2013, following trial by the court sitting without a jury on July 15, 2013, and after consideration of the parties' proposed findings of fact and conclusions of law, the court finds in favor of the plaintiff David Jenkins and against the defendant Martin Law Offices, LLP in the amount of $35,760, plus interest at the legal rate from August 12, 2007, plus costs.